## Chew's Appeal.

*Decree of Common Pleas against Trustee for payment of Money, enforced by Attachment.*

A court of equity has power, since the Act of 1842, to enforce a decree for the payment of money by a trustee, by process of attachment against his person; arrests "in proceedings as for contempt to enforce civil remedies" being excepted from the operation of that act.

APPEAL from the Common Pleas of *Philadelphia county.*

This was an appeal by Benjamin Chew from the decree of the court below, made on the 22d November 1862, awarding an attachment against him for the non-performance of an order of the court, made on the 25th of September 1858, directing him to pay over to Henry B. Chew and James M. Mason, executors of Benjamin Chew, deceased, or their attorney, the sum of $1382.20, being their distributive portion of the balance in his hands as their trustee.

In answer to a rule to show cause why an attachment should not be awarded for non-payment of the money to Henry B. Chew, as sole surviving executor, Benjamin Chew, the respondent, presented an affidavit setting forth—1. That the order served on him was to pay the amount of the decree to Henry B. Chew and James M. Mason; that the said James M. Mason hath been dismissed from his office of executor of B. Chew, deceased, and no order hath been made for payment of the decree to the said Henry B. Chew alone. 2. That the said Henry B. Chew is a citizen and resident of the state of Maryland, and by order of this court gave security in $50,000, as a non-resident executor; that both of his sureties are deceased, and an application is now pending before this court for further security; and this respondent ought not to be compelled to pay the amount of the decree to the said Henry B. Chew, until such security is given. 3. That the said Henry B. Chew has in his possession upwards of $30,000 of this deponent's share of his father's estate, which he refuses to pay over, under the false and fraudulent pretext that deponent has forfeited his right thereto; that this court has decided that no such forfeiture has been incurred, from which decree the said Henry B. Chew has appealed, with security in $100 only, and this deponent is advised and insists that he ought not to be compelled to pay over the sum decreed to the said. Henry B. Chew, whilst the latter has so large a sum of deponent's money in his hands without security. 4. That said Henry B. Chew has filed no account since the year 1853, and proceedings are now pending against him to compel him to account for the assets of the estate of B. Chew, deceased, in his hands. The respondent also contended that inasmuch as the decree was for the payment of

money only, the court had no power to enforce it against him by process of attachment.

The court below made the rule absolute, and awarded the attachment; whereupon the respondent took this appeal, averring that the court below erred in awarding an attachment against him.

*F. C. Brightly*, for appellant.—1. The first and main question arising upon this record is whether a court of equity, since the passage of the Act of 1842, abolishing imprisonment for debt, can enforce a decree for the payment of money only, by process of attachment against the person of the debtor. The Constitution of Pennsylvania is opposed in principle to imprisonment of the person of a debtor: Art. 9, § 16. Under this provision the legislature has, from time to time, passed laws for the regulation of the imprisonment of debtors, first, by the passage of the acts establishing a system by which insolvent debtors may be discharged from liability to arrest and imprisonment, upon delivering up their estate for the benefit of their creditors; secondly, by prohibiting the imprisonment of the person of a debtor in certain cases, as freeholders, by the Act of 1725; females by the Act of 1819; and executors and persons sued in a representative character by the Act of 1836; and finally, by abolishing it altogether by the Act of 1833, as to debts not exceeding $5.33, and by the Act of 1842, as to debts of any amount.

Process of contempt, as employed in courts of equity, is of two kinds; and is used either for the purpose of punishing an act of misconduct, in which case a definite punishment is inflicted, or to enforce performance of a duty, as the putting in of an answer or the execution of a decree; and in the latter case the commitment is without prescribed limitation, but is determined by the willingness of the party to submit himself to the law. The proceedings for contempt, which are excepted from the operation of the Act of 1842, are such as are in use to enforce an appearance, to compel the putting in of an answer, to punish the breach of an injunction, or to have execution of a decree, where it is for the performance of some other act than the mere payment of a sum of money. The act forbids the imprisonment of the body of the debtor on process issued for the recovery of money "due upon any judgment or decree;" the process of a court of equity is therefore clearly within the prohibition when used simply as process of execution for the recovery of a pecuniary demand. See Maag's Case, 1 Ash. 97; Nagley's Case, 1 Id. 373, under the Act of 1819, forbidding the arrest or imprisonment of females for debt: Vernon *v.* Vandery, 2 Atk. 119.

It has been decided, both in England and this country, that persons imprisoned for non-payment of money, may be discharged

[Chew's Appeal.]

under the insolvent debtors' acts, such attachments being considered in the nature of executions to compel the payment of debts: 4 T. R. 809–10; Cowp. 136; 1 Ves. Jr. 269; 3 Dessaus. Ch. 269, 549. And see Coop. Ch. 198; 2 Rose 196; 3 Ves. Jr. 554. See also Lessee of Hawkins v. Fackman, Hil. 1795; 2 Ridgw. P. C. 309. But this question received a direct decision in Scott's Case, 1 Grant 237, and although that case was heard at Chambers, before Lewis, C. J., on *habeas corpus*, yet the chief justice says, in the conclusion of his opinion, that Judges Lowrie, Woodward, and Knox fully concurred with him in the views there expressed. See also Martin's Case, cited in Binns's Justice 148; Geyger v. Stoy, 1 Dall. 135, decided in 1785; 4 Yeates 237, 240.

2. The other questions arising upon this record are presented by the defendant's answer to the rule for the attachment. The first is, as to the regularity of the proceedings of contempt. These proceedings were as follows: On the 25th September 1858, the court below made the decree, a copy of which was served on the appellant. On the 25th October 1862, a suggestion was filed by Henry B. Chew that James M. Mason had been dismissed by the Orphans' Court from his office of executor, on the 6th of September 1862. And on the same day, Henry B. Chew filed the following affidavit, upon which the rule for the attachment was granted:—

" H. B. Chew, being duly sworn, says he is the sole surviving executor of B. Chew, deceased, and the person named in the auditor's report; that the said Benjamin Chew has wholly neglected and refused complying with the order of September 25th 1858, for the payment of $1382.20 to the executors of B. Chew, deceased."

These proceedings, it is submitted, were insufficient to put the defendant in contempt according to the rules of equity practice: 1 Smith's Ch. Pr. 429–30; 2 Daniel's Ch. Pr. 1250; Parrot v. Quernan, Halst. Dig. 178; Jackson v. Clark, 13 Price 208. In this case the decree was to pay to Henry B. Chew and James M. Mason, and although after the dismissal of Mason, Henry B. Chew might, under our Acts of Assembly, have power to go on and enforce the decree, yet without the service of an order directing the payment to him alone, and a personal demand, either by himself or by his attorney duly authorized, the defendant could not be placed in contempt. No such order was ever served on the appellant—no demand for payment was ever made by Henry B. Chew, or by any person holding a power of attorney authorizing him to receive the money; and even if such power of attorney existed, it was never exhibited to us. The appellant, therefore, was clearly not in contempt, and the awarding of the attachment was erroneous. The other reasons assigned by the defendant why the attachment should not be issued, addressed

[Chew's Appeal.]

themselves strongly to the equitable discretion of the court. It was contrary to all the principles of equity to compel the defendant to place another sum of money in his hands until he should have given some security to protect the estate from loss.

*R. C. McMurtrie*, for appellee.—1. The Act of Assembly abolishing imprisonment for debt is confined to suits and judgments upon contracts express or implied, and damages for non-performance of a contract. It expressly excepts "proceedings as for contempt to enforce civil remedies." The liability of Mr. Chew was that of a trustee having possession of a fund which had been awarded to the executors of B. Chew, deceased. Seeing then that such a liability has always been enforced by "a proceeding as for contempt to enforce civil remedies," and this is preserved by the act, it is difficult to see how the case is affected by the act. It may well be held that such a liability is not within the enacting clause, for though it may in one sense be a liability arising out of an implied contract, yet that is a forced construction; naturally it is a duty imposed by law by reason of a receipt of money in the official capacity. The sheriff who collects money under a *fi. fa.* occupies precisely the same situation, and it will hardly be contended that the court cannot compel him to bring the money in. If this remedy is abolished, as to trustees, executors, guardians, &c., then the court has lost all control over trust funds in the hands of persons occupying any fiduciary situation. There are but two forms of process in such cases, executions and attachment. The former cannot go against the trust funds, but only on the property of the trustee. Scott's case was a decree against an executor on his testator's contract, not in any sense an order to apply trust funds in his hands. 2. The order was to pay to two executors. Either could receive and give a discharge. How can it be that the death or removal of one absolves from a duty to the survivor? The Act of Assembly 1834, Purd. Dig. p. 27, pl. 1, provides expressly for this. 3. As to the other reason, if such it may be called, it is clear that there is no proof on the subject, and it must be assumed this was shown in the court below. How can a final decree be suspended on an allegation of a set-off undetermined?

The opinion of the court was delivered, February 16th 1863, by STRONG, J.—The appellant complains of an order of the Court of Common Pleas awarding an attachment against him for a contempt incurred by disobedience of their direction that he should pay over to the executors of Benjamin Chew, deceased, a sum of money which he holds as their trustee. He alleges that since the Act of 1842, abolishing imprisonment for debt, a court

of equity cannot enforce a decree for the payment of money only, by process of attachment against the person. If such be the effect of that act, if one who is in the strictest sense a trustee, having in his hands a sum of money belonging not to himself, but to his *cestui que trust*, may not be attached for contemptuous disobedience of an order of the court to pay it over, courts of equity are in many cases powerless to enforce their decrees. And this may be so when the money is in full view of the courts, and nothing but the will of the trustee to perform his duty is wanting. The trust property cannot be reached by execution or sequestration; for those writs do not extend beyond the property of the trustee. They cannot lay hold of the property of the *cestui que trust* wrongfully withheld, and even if the trustee may be forced to make an assignment in insolvency, the assignment carries no property but its own. If he has the money deposited specifically in bank, or marked and labelled in his strong-box at home, neither the sheriff nor his assignee in insolvency can touch it, and he may laugh the order of the court to scorn. Does the Act of 1842, in such a case, exempt the trustee from liability to attachment for a contempt, if he disobey a positive order of the court to pay the money? Its language is, that "no person shall be arrested or imprisoned on any civil process issued out of any court of this commonwealth, in any suit or proceeding instituted for the recovery of any money due upon any judgment or decree founded upon contract, or due upon any contract, express or implied, or for the recovery of any damages for the performance of any contract, excepting for proceeding as for contempt, to enforce civil remedies, &c." Then follow certain other exceptions. The act prohibits arrest on civil process for the recovery of money due upon contract, express or implied, or due upon judgment or decree founded on contract. All other arrests, for other claims or on other process, it leaves without mention. Now if it be conceded that an attachment for contempt in refusing obedience to an order of a court of equity for the payment of money is civil process within the meaning of the act, it is still very far from clear that an order upon one who is strictly a trustee, to pay over trust-money in his hands, is a decree founded upon contract either express or implied. Certainly it is not in any ordinary sense of the word "contract." The obligation of the trustee grows out of a duty which the law imposes, and not out of any assumption which he has made, or which he is presumed to have made. The legislature may well be supposed to have used the word contract in its common signification, and not to have had in view a breach of trust, always considered a greater wrong than a mere breach of promise to pay. But if this is not so, there is an exception in the act which makes it clear that it was not designed to exempt trustees

from liability to attachment. It is of arrests "in proceedings as for contempt to enforce civil remedies." Such arrests are expressly declared not to be within the operation of the act, or prohibited by it. There can be no reasonable doubt what was meant by the exception. Before the passage of the Act of 1842, it was a well-recognised power and common practice of courts of equity to enforce civil remedies against a trustee who refused to pay money in obedience to their decrees by proceeding against him, as for a contempt, by attachment. True, he might also have been attached for disobedience to other decrees, not for the payment of money; and the appellant argues that the exception reaches no further than to process to enforce such other decrees. He insists that no other proceedings for contempt are contemplated by the exception from the prohibition of the act, than such as were in use to enforce an appearance, to compel the putting in of an answer, to punish the breach of an injunction, or to have execution of a decree where it is for the performance of some other act than the mere payment of a sum of money. But if this is so, of what use is the exception? It is wholly unnecessary. Arrests in proceedings for such contempts are not within the prohibitory clause, and excepting them from its operation would therefore have been idle. The act has no reference to anything else than process to recover money, and when certain process is excepted, it must of course be taken that the excepted process is of a kind which otherwise would be embraced within it. Such is always the nature of an exception. It would then be denying any meaning to the words of the limiting clause, were we to adopt the construction for which the appellant contends.

We are referred to an opinion delivered at chambers by one of the judges of this court, and reported in Scott's Case, 1 Grant 237. That was a case of proceeding against an executor, and so far as may be gathered from the opinion (the report containing no statement of facts), it was to enforce a decree for the payment of money due on a contract. It was quite unlike a proceeding to compel a trustee to apply trust-money. The executor was a debtor; a trustee is more. We do not regard that case as an authority compelling us to adopt such a construction of the Act of 1842, as to deny to the exception the only possible effect which it can have, and make it totally unmeaning.

The other objections urged against the award of the attachment are without force. We have not before us the proof of the service of the order to pay, nor does the record inform us by whom service was made. It is, however, admitted that a copy of the decree was served on the defendant. Some presumptions must be made in favour of the regularity of the proceedings. In the absence of proof to the contrary, and in view of the fact that we have no full copy of the record, we must pre-

sume that the copy of the decree was served by one who had authority to receive the money, and that the service was duly attested. The appellant was then clearly in contempt, and the award of the attachment was regular.

The decree of the Court of Common Pleas is affirmed.