Miller *v.* Myers et al., Appellants.

Argued March 20, 1930.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Albert C. Hirsch,* with him *Coleman Harrison* and *Watson & Freeman,* for appellants.—The Bulk Sales Act of 1919 provides for, and changes, methods for the col-

lection of certain debts in an unwarranted classification and therefore violates section 7 of article III of the Pennsylvania Constitution, which prohibits local and special legislation on that subject: York Co. Bank v. Carter, 38 Pa. 446; Uhler v. Maulfair, 23 Pa. 481; Buckwalter Stove Co. v. Edmonds, 283 Pa. 236; Schmucker v. Lawler, 38 Pa. Superior Ct. 578; Laplacca v. Transit Co., 265 Pa. 304; Gerli v. Silk T. Co., 70 Pa. Superior Ct. 299; Pa. Co. for Ins., etc., v. Phila., 262 Pa. 439; Lumber Co. v. Carnegie Institute, 225 Pa. 486.

If there is a classification, it must be one which classifies liens and debts, creditors and debtors: Laplacca v. P. R. T., 265 Pa. 304; Ayars's App., 122 Pa. 266; Com. v. Casey, 231 Pa. 170; Northrop v. Construction Co., 260 Pa. 15.

Even as a classification of sales, however, there is no reason for a special treatment of this particular class, as distinguished from sales of other personal property: Feingold v. Steinberg, 33 Pa. Superior Ct. 39; Wilson v. Edwards, 32 Pa. Superior Ct. 295.

The bill should have been dismissed because its only basis is the Bulk Sales Act of 1919, P. L. 262, which has been repealed by the Uniform Fraudulent Conveyances Act of 1921, P. L. 1045: Geary v. Schwem, 280 Pa. 435; Ochse Co. v. Drda, 16 Pa. Dist. R. 409; Murdoch v. Biery, 269 Pa. 577; Spees v. Boggs, 204 Pa. 504; Com. v. Scott, 287 Pa. 392; Montgomery v. Martin, 294 Pa. 25; Com. v. Summerville, 204 Pa. 300.

The court erred in making awards to vendor's creditors who had not become parties to this proceeding within 90 days after the sale,—even if the Bulk Sales Act of 1919 had not been repealed and were not unconstitutional.

The total indebtedness of the vendor, rather than the total claims presented and proved, should have been used in fixing the pro rata distribution to creditors: Miller's App., 35 Pa. 481.

The court erred in holding defendants liable for interest, in addition to the value of the goods sold.

The court below had no jurisdiction to award plaintiff's attorney a fee of $900 to be paid by defendants,—even if it were conceded that the Act of 1919 were in full force, had not been repealed and were not unconstitutional: Com. v. Meyer, 170 Pa. 384; Whitney v. Boro., 266 Pa. 537; Hempstead v. Theological School, 286 Pa. 493; Tarr's Est., 10 Pa. Superior Ct. 554; Smith v. Trust Co., 215 Pa. 413.

*Earl F. Reed,* of *Thorp, Bostwick, Stewart & Reed,* for appellee.—Interest on the fund was properly chargeable to the defendants.

The allowance of attorney's fees was proper: Hempstead v. Theological School, 286 Pa. 493; Trustees v. Greenough, 105 U. S. 527.

The court properly disregarded creditors' claims not presented.

The Bulk Sales Act of 1919 is constitutional: West Shoe Co. v. Lemish, 279 Pa. 414; Wilson v. Edwards, 32 Pa. Superior Ct. 295; Feingold v. Steinberg, 33 Pa. Superior Ct. 39; Lemieux v. Young, 211 U. S. 489; Klein v. Maravelas, 219 N. Y. 383; Felix v. Mfg. Co., 5 Pa. D. & C. 93.

The Bulk Sales Act of 1919 has not been repealed: Gibbon v. Arronson, 80 Pa. Superior Ct. 36.

OPINION BY MR. JUSTICE SADLER, April 14, 1930:

The plaintiff, C. S. Miller, prior to January 12, 1926, became a creditor of the E. A. Myers Corporation to the extent of $4,647. On that date the debtor disposed of all of its assets in bulk to E. A. Myers as agent for all of the defendants named, who were copartners. No notice of the sale was given to those interested in the assets as required by the Bulk Sales Act of May 23, 1919, P. L. 262. Within ninety days, a bill in equity was filed by Miller, as permitted by the statute mentioned,

to compel the vendees to account to him, so that he might recover payment of his claim or a pro rata part thereof, based on the value of the goods transferred, and considering the total indebtedness. The defendants asked that the proceedings be dismissed, averring the plaintiff was not a creditor, and that proper parties were not joined, alleging also that the act of assembly upon which the suit was based had been repealed.

These preliminary objections, raising questions of law, were overruled and an answer on the merits filed. After hearing, the trial judge determined that the terms of the Bulk Sales Act had not been complied with, fixed the value of the goods transferred, and directed payment of plaintiff's demand, which it held a valid debt. Thereafter, other creditors intervened, asking that the vendees be held as receivers for the actual worth of the property sold, and that all having accounts due be allowed to share pro rata. As a result, the case was reopened and further testimony taken. The former decree was set aside, and all proving sums owing were permitted to participate in the fund determined to be distributable. An appeal then taken to this court was quashed as premature: Miller v. Myers, 297 Pa. 197.

Upon the return of the record, an additional hearing was had, and, on January 2, 1930, an amended award made to those entitled to a part of the sum representing the value of the goods sold without compliance with the requirements of the act. From this decree the present appeal was taken. It is now urged that the Bulk Sales Act has been repealed by the Uniform Fraudulent Conveyance Act of 1921 (May 21st., P. L. 1045), and, if not, the enactment is unconstitutional. Further complaint is founded on the determination of the amount payable to the creditors, and those entitled to share. The original objections, based on the alleged want of proper parties, and that plaintiff was not a creditor, were abandoned.

The first legislation dealing with transactions such as now before us was passed on March 28, 1905 (P. L. 62), and provided that sales of entire stocks of merchandise should be deemed fraudulent and voidable as against creditors, unless notice of the proposed disposition was given to the latter within the time designated. This statute was repealed in 1919, and a more detailed presentment of the rights of the parties in such cases was substituted. The time for informing those having claims, so that legal objection might be made, was extended to ten days, and, by the third section, it was provided that if the proper notices were not given prior to the consummation of the transaction, to all creditors "then such sale or transfer shall be fraudulent and void, and such purchaser, auctioneer, or agent shall, at the suit of any creditor, be held liable to the creditors of the said vendor as a receiver for the fair value of all the property so bought or sold by him."

It is earnestly contended that such a statute violates article III, section 7, of the Constitution, which directs that "the General Assembly shall not pass any local or special law......authorizing the creation, extension or impairing of liens......or providing or changing methods for the collection of debts." As was said by Mr. Justice Frazer, in Laplacca v. P. R. T. Co., 265 Pa. 304, 308: "All legislation, however, relating to the creating of liens, or providing new methods for the collection of debts, is not prohibited by the Constitution, but such only as comes within the definition of local or special laws. The act in question applies generally to the entire State, hence is not local. We must, therefore, determine whether its provisions are special within the meaning of the word as used in the Constitution."

The purpose of the Act of May 23, 1919, supra, supplanting that of March 28, 1905, supra, was to protect creditors against the sale of stock on hand as a whole to the prejudice of those affected, and who could look to the assets alone for the satisfaction of their claims. The

legislature expressly provided for the relief of all parties concerned where the transfer of the merchandise was in bulk. It was directed that the sale should be void if the provisions of the act were not complied with. The vendees could protect themselves by following the legislative directions as to preliminary notice. Even if there was a failure to comply, the purchaser was liable to creditors only for the value of the goods, and, if any question arose as to those entitled to share, leave was given, for his protection, to pay the amount into court for distribution after hearing had: West Shoe Co. v. Lemish, 279 Pa. 414.

It is urged that the act permits the creditor to proceed directly against the purchaser, but if the goods had been fraudulently transferred, the same could have been reached in the hands of the one who with knowledge had wrongfully taken them into possession. No obligation on the part of the purchaser to directly pay those holding claims against the vendor is created. The act imposes certain duties upon the purchaser which he must perform, where goods are acquired in bulk, and not in the ordinary course of trade. If he fails to obey the legislative direction, he becomes liable only as a receiver for the value of the property wrongfully received, and he may fully protect himself by paying the amount thereof directly into court for distribution.

Sales of the character contemplated more easily open the door to fraud upon creditors than a disposition of goods in the usual conduct of business, and, therefore, their regulation was deemed advisable by the legislature. "As the subject to which the statute relates was clearly within the police powers of the State, the statute cannot be held to be repugnant to the due process clause of the 14th Amendment, because of the nature or character of the regulations which the statute embodies, unless it clearly appears that those regulations are so beyond all reasonable relation to the subject to which they are applied as to amount to mere arbitrary usurpation of

power. This, we think, is clearly not the case. So, also, as the statute makes a classification based upon a reasonable distinction, and one which, as we have seen, has been generally applied in the exercise of the police power over the subject, there is no foundation for the proposition that the result of the enforcement of the statute will be .to deny the equal protection of the laws": Lemieux v. Young, 211 U. S. 489. The making of a purchaser, not conforming to the statute, a receiver for the benefit of the seller's creditors does not deprive him of property without due process: Kidd, Dater & Price Co. v. Musselman Grocer Co., 217 U. S. 461. A separation of sales in bulk from ordinary transactions, and the regulation of the details requisite to the passing of title, is a reasonable classification to meet a special situation for which the legislature has the power to provide.

Class legislation, discriminating against some and favoring others is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if, within the sphere of its operation, it affects all persons similarly situated, is not constitutionally objectionable. The Bulk Sales Act relates to unusual and extraordinary transfers, affording exceptional chances of fraud, and its enactment is a reasonable exercise of the police power within the discretion of the legislature. The fact that the statute does not embrace all kinds of property, either personal or real, does not void it, for it is sufficient if the selection of articles and property be based on reasonable and just grounds of difference; and the prohibition comprehends all kinds of property within the relation and circumstances which constitute the distinction, extends equally to every citizen and all classes of citizens, and denies to no one a privilege which another is permitted under like circumstances to exercise. The above declarations, with others, upholding the constitutionality of the earlier Bulk Sales Act of 1905, are made in the opinion of Judge RICE in Wilson v. Edwards, 32 Pa. Superior Ct. 295. What was said in the

case cited answers in main the objections now raised to the supplanting statute of 1919, with which we are at present concerned.

It is clear that the liability of the vendee is neither personal nor general, but the purchaser is merely made a receiver for the fair value of the property, if he fails to comply with the provisions as to preliminary notice, and even this responsibility can be terminated by payment of the amount into court when the vendee disregards the legislative mandate: Schmucker v. Lawler, 38 Pa. Superior Ct. 578. "In most jurisdictions the mere violation of the Bulk Sale Statutes does not of itself impose any personal liability on the purchaser, and the statute will not be construed to impose such a liability in the absence of plain terms requiring that construction": 27 C. J. 886. The defect in appellant's argument rests on the assumption that the statute under consideration provides a special method for the collection of debts, but this is neither the purpose nor effect. The buyer is merely made a receiver of the money value of the property which he takes over, and becomes liable to account to another for whose use it is received and held. He does not become personally responsible for the indebtedness outstanding, but is compelled to account to the creditors for the worth of that which he has in law fraudulently taken into his possession.

Acts of assembly, giving to certain parties special liens or methods of collecting indebtedness, have been held unconstitutional (Laplacca v. P. R. T. Co., supra; Strine v. Foltz, 113 Pa. 349; Penna. Co. for Ins. on Lives v. Phila., 262 Pa. 439; Gerli v. Perfect Silk T. Co., 70 Pa. Superior Ct. 299), but the Bulk Sales Act justifiably classifies transfers of property and does not furnish to any creditor or class preference in the collection of their claims. It simply provides that certain steps be preliminarily taken by a purchaser before accepting a transfer, which, by reason of its peculiar character, may lend itself to fraud. If he fails to act, in the

manner deemed by the legislature necessary to safe-guard legal claimants, he becomes chargeable not with the debt due, but the value of the goods for the benefit of those who are affected and make demand for a share of the proceeds. The requirement that he give notice to those interested before paying the purchase money does not impose an unreasonable burden, and has been deemed necessary to prevent the perpetration of fraud where merchandise is disposed of in bulk. The necessity for such action, to protect claimants under the special circumstances, is a matter for the exercise of legislative discretion, and with its determination we cannot interfere. The constitutionality of acts, such as now under consideration, has been generally upheld in other jurisdictions: 27 C. J. 874.

It is further contended that the Act of 1919 is ineffective, since it was impliedly repealed by the Fraudulent Conveyance Act of May 21, 1921, supra. The later legislation, dealing with cases where an intent to defraud appears and is proven, expressly repealed the Bulk Sales Act of 1905, which had already been supplanted in terms by the Act of 1919, but makes no mention of the latter statute. It, therefore, did not directly annul it, nor can it be said, as urged by appellant, that it impliedly did so because dealing with the same subject-matter. The Bulk Sales Law covers transfers whether the party be solvent or actual fraud is proven, whereas the Fraudulent Conveyance Act applies only where there is a voluntary conveyance made without consideration with intent to defraud. In discussing this question, it was said, in Gibbon v. Arronson, 80 Pa. Superior Ct. 36, 40: "The act [of 1919] only has reference to genuine sales in bulk where title is intended to pass and payment is actually made. Fraudulent transfers of property, without consideration, for the purpose of cheating creditors, are not within the scope of the act' and are not affected by the [limitations of it]." By the Act of 1919, the transfer, without notice, raises a pre-

sumption of fraud, making operative the provisions of the statute irrespective of the sufficiency of the price paid, whereas the Act of 1921 was intended to cover cases where such actual wrongful purpose appears.

The court found the value of the goods taken into the vendee's possession, and, in determining the total distributable to creditors, allowed interest on this sum as compensation for the use of the property received without compliance with the terms of the act. In this we see no error. The vendee violated the statutory requirements, and, instead of distributing the sum representing the worth of the merchandise to creditors, or paying the same into court for distribution, kept the goods, or the proceeds thereof. It was proper to charge the defendants with interest on the value of the property or moneys reduced to their possession. Nor can we see that a mistake was made in awarding a reasonable attorney's fee for the benefit of those whose services produced the fund for distribution, at the suit of one creditor, for his benefit and all others who became parties and proved their claims.

It is ordinarily true that counsel fees of a successful litigant are not costs, and cannot be collected from the sum recovered unless expressly authorized by statute. In the present case, the proceeding was equitable, and one, acting for all, raised the receivership and compelled an accounting of the moneys improperly withheld. This situation makes applicable the distinction pointed out in Whitney v. Jersey Shore Boro., 266 Pa. 537, following Winton's App., 87 Pa. 77. The same principle, and the one controlling here, is thus stated in Hempstead v. Meadville Theo. S., 286 Pa. 493, 495: "Where the services protect a common fund for administration or distribution under the direction of the court, or where such fund has been raised for like purpose, it is liable for costs and expenses, including counsel fees incurred. This is the case even though the protection

given or the raising of a fund results from what may be properly termed adversary litigation."

The final question raised complains of the allocation of the fund amongst the creditors. In the first instance, the plaintiff, filing the bill within the ninety-day period, was alone awarded payment, and, in full, as the worth of the goods transferred exceeded his total demand. Later, others intervened and claimed a share in the amount for distribution. Upon reconsideration, all claimants were notified to prove their claims, whether presented within the period fixed for adversary action by the Bulk Sales Act or not, and distribution was made pro rata to those who established their demands. Whether those who failed to object and make claim within ninety days could thereafter become parties and demand a proportionate share was questioned, but the court determined the receiver appointed held for all who established their rights as creditors prior to actual distribution. As the statement of questions involved does not suggest the incorrectness of this conclusion it is not necessary to now consider it.

Only those who claimed a part of the fund for distribution could be considered in determining the total indebtedness. If others were entitled to become parties to the proceeding and share in the amount raised, but declined or failed to take part and make demand, they could not be considered in making the final award. A trust fund was established for the benefit of those having valid demands, but the holders were not compelled to present them if, for any reason, they saw fit not to do so. Ample notice and opportunity was given to any creditor desiring to assert his right, but, in distributing the funds in the hands of the receiver, the equity court could consider only those who made proper proof of their claims.

Nor do we see error in refusing to permit defendants to insist that the claims of creditors purchased by them should be considered as of their face value, rather than

the amounts actually paid for the assigned indebtedness. To the extent of payment, the assignee was properly subrogated (27 C. J. 886), as permitted by the chancellor. He also awarded to the defendants themselves, who were individual creditors of the vendor corporation, a proportionate share in the fund. The right of the latter to an allowance might be questioned, since they were parties to the violation of the Bulk Sales Act, but the pro rata distribution to them is not disputed in the present case. The appellants have no just cause to complain of the allotment finally made.

The decree is affirmed at the cost of appellants.