International Shoe Company (et al., Appellant) *v.* Duttenhofer et al.

Argued March 13, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harry Fischer,* of *Illoway & Fischer,* with him *Jesse R. Evans,* for appellant.

*Joseph S. Kleinbard,* with him *Louis E. Levinthal,* for appellees.

OPINION BY CUNNINGHAM, J., December 11, 1935:

This is an appeal by a creditor from an order discharging its rule to show cause why an attachment for contempt should not issue against the respondents for disobedience of an order of court made in a proceeding under the Bulk Sales Act of May 23, 1919, P. L. 262, 69 PS §521-523.

The vendor in the sale out of which this litigation arose was F. A. Duttenhofer. In April 1932, while indebted to a number of creditors, including the appellant bank, he sold, in bulk, his stock of shoes in his store in Pottstown to Harry and Penrose Reichman for $5500. They paid the purchase price without demanding or receiving from Duttenhofer a written statement, under oath, of the names and addresses of all his creditors, nor were the creditors notified of the sale, as required by the Act. The bill of sale, in fact, recited that the stock was "free from all incumbrances." The Reichmans continued to run the business in Duttenhofer's name, and did not take open, notorious or visible possession of the goods until May 31, when they removed the remainder of the stock to Philadelphia, where it was sold at auction. Within ninety days thereafter International Shoe Company a creditor of the vendor filed a bill, in its own behalf and on behalf of such other creditors as might intervene, to have the sale declared fraudulent and void, and the Reichmans held liable to the vendor's creditors, as "receivers," for the "fair value" of the merchandise, in accordance with the provisions of section three of the Act. This proceeding resulted in decrees holding the sale fraudulent and void, fixing the fair value at $9,000 and directing the Reichmans to pay appellant the ascertained amount due it within ten days. The Reichmans having failed to make

the payment ordered, the present rule was issued against them to show cause why they should not be committed for contempt. In their answer they stated that the only reason for their failure to .comply with the decree is that they had been, and then were, without funds with which to do so. After argument, the court below in an opinion by HEILIGMAN, J., discharged the rule and we now have this appeal by the bank.

Section 3 of the Bulk Sales Act provides that if the provisions of the Act are not complied with, "then such sale or transfer shall be fraudulent and void, and such purchaser......shall, at the suit of any creditor, be held liable to the creditors of the said vendor as a receiver for the fair value of all the property so bought or sold by him."

Appellant, relying upon such cases as Chew's Appeal, 44 Pa. 247 and Allen v. Pennypacker, 302 Pa. 495, 153 A. 734, argues that the necessary effect of this language is to make a sale and purchase in violation of the Act a legal fraud—a fraudulent conveyance—and to impose upon the purchaser the status of a trustee ex maleficio.

In other words, it is contended that the matter now before us is "a proceeding as for contempt to enforce a civil remedy" within the meaning of the exception in the Act of July 12, 1842, P. L. 339, abolishing imprisonment for certain classes of debts. Cf. Estate of Jacob M. Weaver, 114 Pa. Superior Ct. 439, 174 A. 905.

We are not persuaded that the legislature intended, by the use of the phrase "fraudulent and void" and the word "receiver," to make every bulk-sale purchaser who has failed to comply scrupulously with every provision of the Act a trustee ex maleficio, particularly where it does not appear that the merchandise, or its proceeds, is in "full view of the court."

The.legislature has provided that noncompliance with the Act renders the sale voidable as to creditors of the vendor by reason of an actual fraud in law against

them. Cases may arise in which such elements of concealment, misrepresentation, dishonesty, bad faith, willful disobedience of orders of court, etc., are present as to make the purchaser a constructive trustee ex maleficio and justify the drastic remedy here sought, but, in our opinion, this is not such a case.

It is equally true that a purchaser may, in good faith, believe he has complied with the Act, but, after he has disposed of the goods and their proceeds, discover that he is liable to his vendor's creditors in an amount in excess of his own valuation of the merchandise.

We are not able to conclude the legislature intended that such a purchaser was to be imprisoned merely because he is unable by reason of poverty to comply with a decree directing payment of the amounts due his vendor's creditors.

The kind of conduct for which the legislature expressly provided imprisonment is described in the fourth section of the Act, where it is provided that a vendor who shall knowingly or willfully make false statements with respect to the names of his creditors, and the amount due each, shall be guilty of a misdemeanor.

Again, in Chew's Appeal, supra, the respondent had been adjudged guilty of the misappropriation of funds received for a specific purpose. For breaches of duty by trustees involving fraud and similar misconduct courts will not hesitate to proceed by attachment as for contempt.

Here, however, the most shown was that the purchasers paid the purchase price without having first demanded and received from their vendor the statement provided for in the Act and without "seeing to it that the purchase money" was applied to the payment of the bona fide claims of his creditors. There was no finding that they had the proceeds of the stock in their hands when the proceeding was instituted. The Act, being in

derogation of the common law right to purchase and sell property and being highly penal, must be construed strictly (Gitt v. Hoke et al., 301 Pa. 31, 151 A. 585; Broad Street National Bank v. Lit Bros., 306 Pa. 85, 158 A. 866) and, so construing it, we are of opinion that the legislature meant primarily by the use of the phrase "shall be fraudulent and void" that sales made without compliance with its provisions should be voidable at the suit of the vendor's creditors regardless of the intent of the parties. This was the conclusion reached by President Judge RICE, in considering the effect of the phrase, "shall be deemed fraudulent and voidable," as used in the Act of March 28, 1905, P. L. 62, the antecedent of the present Act. In Wilson v. Edwards, 32 Pa. Superior Ct. 295, that eminent jurist said, at page 302, "Having regard, however, to 'the old law, the mischief and the remedy,' as well as to the natural and ordinary meaning of the word [deemed] when used in such a connection as this, we entertain no doubt that it was intended by the legislature that noncompliance by the purchaser with the provisions of the act should render the sale voidable as to creditors." The remedy intended to be prescribed by the Act of 1919 is, we think, to place creditors of the vendor in the same position, so far as sales in violation of the statute are concerned, as if such sales had never taken place: Schmucker v. Lawler, 38 Pa. Superior Ct. 578; Schumacher-Binzley Co. v. Riddle, 52 Pa. Superior Ct. 6; Miller v. Myers et al., 300 Pa. 192, 150 A. 588.

Nor do we think the legislature intended the word "receiver" to have the meaning contended for by appellant, i. e., an officer appointed by a court and over whom it has summary jurisdiction. Of course, such a receiver may be committed for failure to pay over moneys entrusted to him.

In the only case called to our attention in which this question was considered (and diligent search has re-

vealed no others) the conclusion reached accords with our views. We refer to Cowen v. Gruber, 176 App. Div. 905; 162 N. Y. Supp. 1053, in which the Appellate Division of the Supreme Court of New York held that a purchaser of goods who failed to comply with the Bulk Sales Act of that state, which in this particular is almost identical with our own, could not be committed for contempt for failing to obey an order directing him to convey, or account for the fair value of, the property to the vendor's creditors. The argument advanced in that case was that, as the statute provided the purchaser should be liable as "a receiver" he was under the control of a court of equity, like any other receiver appointed by the court, and punishable by contempt for disobedience of its orders. The court rejected this contention, pointing out the basic differences between such a "receiver" and one appointed by a court and under its control, and held that the use of this term in the statute meant only that the purchaser was bound to distribute the fair value of the property between the creditors pro rata, as would an ordinary receiver.

What we have here said has application only to the facts of this case. Having regard to all the circumstances here present, we are of opinion that this appellant is not entitled to enforce collection of its debt from these purchasers by imprisonment.

The order discharging the rule is affirmed at the cost of appellant.