## Miller v. T. I. C. Consumer Discount Company et al.

*Swope, Brown & Swope,* for claimant.

*Keith, Bigham & Markley,* for Sheriff of Adams County.

*Donald P. McPherson,* for T. I. C. Consumer Discount Company.

SHEELY, P. J., July 29, 1949.—Claimant, Ralph J. Miller, entered into an agreement with one Albert L. Wolford for the purchase of the stock of goods and

equipment of a gasoline station for $1,592.05. Wolford, the seller, notified Miller, the buyer, that he had but two creditors. He then executed, but did not immediately deliver, an affidavit substantially in the form provided by the Bulk Sales Act to the effect that he had no creditors. Miller then paid the two creditors in full, whereupon Wolford delivered to him the bill of sale, schedule, and the affidavit of no creditors previously sworn to, and Miller paid to him the difference between the sale price and the amounts paid to the two creditors. At the time Wolford had additional creditors, unknown and not divulged to Miller, including T. I. C. Consumer Discount Company, defendant. The discount company levied upon the assets sold and delivered by Wolford to Miller, and Miller then filed his claim in sheriff's interpleader. The matter is now before the court on the discount company's motion for judgment on the pleadings in the interpleader proceeding, the facts above recited being admitted.

The question presented is whether, on the facts stated, Miller is liable to creditors of Wolford under the provisions of the Bulk Sales Act of May 23, 1919, P. L. 262, 69 PS §521. There is no allegation of bad faith on the part of Miller but the discount company contends that he is liable for two reasons: (1) The Bulk Sales Act requires a statement of creditors with a supporting affidavit, and an affidavit of no creditors does not comply with the act; (2) Miller paid a portion of the purchase price to, or for the benefit of, the seller without first requiring the list of creditors, and otherwise complying with the provisions of the act.

"The purpose of the Act of May 23, 1919, P. L. 262, supplanting that of March 28, 1905, P. L. 62, was to protect creditors against the sale of stock in hand as a whole, to the prejudice of those unpaid, and who could look to the assets alone for the satisfaction of their claims. The legislature expressly provided for the

relief of all parties concerned where the transfer of the merchandise was in bulk. Not only was an accurate inventory showing values required to be made, but a sworn statement setting forth the names and addresses of the claimants, with provision for notice to them so that objection to the transfer could be lodged if deemed advisable. It was also directed that the sale should be void if these provisions were not complied with. The vendee, in case of doubt, was granted permission to pay the purchase price into court, which would make the appropriate distribution after hearing": West Shoe Co. et al. v. Lemish et al., 279 Pa. 414, 417 (1924).

The act applies regardless of the intention of the parties, and the effect of noncompliance is to make the sale voidable as to creditors of the seller: Wilson v. Edwards, 32 Pa. Superior Ct. 295, 302 (1907). The purpose of the act, however, is not to penalize the purchaser for noncompliance, but to provide a means to protect the creditors of the seller. To accomplish this purpose the act requires a purchaser of goods in bulk to do certain things: (1) Before paying any part of the purchase price he must demand and receive from the vendor a sworn statement of the names and addresses of all the creditors of the vendor, together with the amount of indebtedness due to each, and an accurate inventory of the goods to be purchased; (2) at least 10 days before the completion of the purchase or the payment therefor, he must notify, personally or by registered mail, each of said creditors of the proposed sale, the price to be paid, the time set for the sale, and a copy of the list of creditors, and (3) he must pay the purchase price to the creditors pro rata, or pay it into court for distribution.

The act, being in derogation of the common-law right to purchase and sell property, and being highly penal, must be construed strictly and cannot be extended

beyond its plain language: International Shoe Co. et al. v. Duttenhofer et al., 120 Pa. Superior Ct. 102, 107 (1935) ; Gitt v. Hoke et al., 301 Pa. 31 (1930). Since the act declares the sale void only when the purchaser fails to perform the duties required of him by the act, it follows that if he acts in good faith in performing those duties he is not responsible if the seller inadvertently or willfully omits the names of one or more creditors. He is not a guarantor of the accuracy of the sworn statement of the seller. To hold otherwise would make an innocent purchaser liable for the fraud of the seller to which he was not a party: Coach v. Gage, 70 Ore. 182, 138 Pac. 847 (1914) ; International Silver Co. v. Hull & Co., 140 Ga. 10, 78 S. E. 609 (1913; Glantz v. Gardiner, 40 R. I. 297, 100 Atl. 913 (1917) ; Mc-Kelvey v. John Schaap & Sons Drug Co., 143 Ark. 477, 220 S. W. 827 (1920) ; Buch v. Miller, 94 Pa. Superior Ct. 237 (1928). See 83 A. L. R. 1140.

While we have found no case directly in point, it would follow that if he is not responsible where the seller omits the name of one or more creditors, he would likewise not be responsible if he, in good faith, relied upon the seller's affidavit of no creditors. In Fischer et al. v. Rio Tire Co. et al. (Tex.) 65 S. W. (2d) 751, 756 (1933), the court said:

"We think a fair and reasonable construction of the statute to be that a purchaser, who in good faith demands and receives an affidavit showing a list of his creditors, *or that he has none*, should not be held liable to creditors, unless known to him, when the transferor has either by fraud or inadvertence omitted the name of a creditor *or stated that he had none*." (Italics supplied.)

If there are no creditors of the seller the buyer has no duty to perform because he obviously could not give notice to, or distribute money to, nonexistent creditors. If there are no creditors, in fact, there is no one who

would be harmed by the sale, and the act would not apply. The first contention of the discount company cannot be sustained.

But that is not quite the present case. Here the seller admittedly had two creditors and advised the purchaser of this fact. Instead of complying with the provisions of the Bulk Sales Act under which the purchaser would have required the seller to furnish a sworn statement of the two creditors and an inventory of the goods, and would have given 10 days' notice to those creditors of the proposed sale, the parties sought to avoid the application of the Bulk Sales Act. In his brief counsel for the purchaser frankly states:

". . . the seller notified the buyer—(claimant) that he had but two creditors and he then executed an affidavit of no creditors. The admitted understanding between the seller and the buyer was that the two items of indebtedness were to be satisfied prior to consummation of the sale and prior to delivery of the bill of sale and the affidavit. This was done."

Had these two creditors been satisfied by the seller independently of the buyer, the situation might be different, but here the buyer joined with the seller to avoid the application of the law and himself paid the creditors and deducted the amounts paid from the purchase price. Apparently the entire transaction was consummated in a single day.

Under these circumstances the buyer must be considered either as having made a part payment of purchase price before requiring the list of creditors and complying with the act, or, as having secured verbally a list of the creditors and having distributed a portion of the purchase price to them without complying with the formalities of the statute. In either event he did not comply with the statute and the sale is therefore fraudulent and void as to creditors. Where a portion of the purchase price was paid to the seller before a

list of creditors was demanded, and the buyer then paid the creditors listed from the balance of the purchase price, but without compliance with the statute, it was held that he was liable to an unlisted creditor: Gregg v. Reisinger, 110 Wash. 680, 188 Pac. 765 (1920). Where the buyer paid all creditors listed in an affidavit of creditors furnished by the seller, and then contended that he had substantially complied with the requirements of the act and that notice to those creditors would have accomplished nothing and would not have aided the present creditor who was not included on the list furnished, the court held that this did not excuse him, saying:

"The very purpose of the act is to give publicity to those who have the right to know of intended sales by insolvent debtors and to prevent clandestine and quickly-made sales. It is highly probable that if notice is given for the time and in the manner required by the act to the creditors whose names are furnished, that persons interested, although not, in fact, notified, may learn, through commercial agencies or otherwise, of the debtor's contemplated action. . . . The law only requires of the purchaser that he comply with its provisions and, when he has done so, he is absolved from liability to any creditor who may not have received notice. Not having complied with the law appellant cannot excuse his liability by showing that he knew nothing of appellee's claim": Stuart v. Elk Horn Bank and Trust Co., 123 Ark. 285, 185 S. W. 263 (1916). And where, instead of notifying creditors, the purchase price was deposited with counsel who distributed it among the creditors listed by the seller, it was held that the purchaser was liable to a creditor whose name was omitted from the list: Ticonic National Bank v. Fashion Waist Shop Co., 123 Me. 509, 124 Atl. 308 (1924).

It is significant, and perhaps controlling, that the Bulk Sales Act makes no provision for payment of the listed creditors, under any circumstance, prior to 10 days after notice of the sale is given. Had the legislature intended that a purchaser could relieve himself of liability under the act by immediately paying all listed creditors it would have so provided just as it provided in section 5 (69 PS §525) that if the seller produces and delivers a written waiver of the provisions of the act from his creditors as shown by the verified statement, then, in that case, the provisions of the act should not apply. We have considered the question whether the present case might come within the waiver provisions of section 5, but we are convinced that payment by the purchaser is not the equivalent of waiver by the creditors. If the listed creditors waive the application of the act they are, in effect, saying that they have confidence in the honesty and the solvency of the seller and that they will not look to the stock of goods for payment. It is unlikely that a dishonest or an insolvent seller could secure such waivers. The situation thus presented is vastly different than that presented where the listed creditors are paid by the purchaser.

It seems harsh to compel this purchaser to pay the purchase price a second time when he acted in good faith in making payments as he did. Had the seller furnished him with an honest affidavit and a true list of creditors no one would have been harmed, but regardless of the answer to the question of whether a buyer may rely upon an affidavit of the seller that he has no creditors, it is clear that the buyer is not protected where he advances a portion of the purchase price for the purpose of paying known creditors in order to avoid compliance with the statute. Judgment must therefore be entered in favor of the discount com-

pany and against claimant and the question then arises as to the form of that judgment.

Upon failure to comply with the provisions of the act, it is provided in section 3 that "then such sale or transfer shall be fraudulent and void, and such purchaser . . . shall, at the suit of any creditor, be held liable to the creditors of the said vendor as a receiver for the fair value of all the property so bought. . . . And provided further, That no proceeding at law or equity shall be brought against the purchaser to invalidate any such sale after the expiration of ninety (90) days from the consummation thereof". As used in this act the words "fraudulent and void" mean "voidable" and unless action is brought within 90 days the sale cannot be attacked for noncompliance with the statute: Gibbon v. Arronson et al., 80 Pa. Superior Ct. 36 (1922). But where action is brought by one creditor as a result of which the sale is avoided, is the purchaser liable to all creditors of the vendor as a receiver even though such other creditors have instituted no action within the 90-day period, or is liability limited to the creditor bringing the action?

The Act of March 28, 1905, P. L. 62, which was supplanted by the Act of 1919, merely provided that a sale in bulk without compliance with the provisions thereof "shall be deemed fraudulent, and voidable as against the creditors of the seller". Nothing further was said as to the liability of the buyer and no provision was made for him to pay the purchase price into court. Under this act it was held that a contention that the legislature had in mind the protection of all creditors equally and not merely the protection of an alert and active creditor who secures judgment and issues execution, was not tenable. It was held that a creditor had the right to attack the sale in the method which was always available to a creditor in order to render of no legal effect, so far as the collection of his claim is con-

cerned, a sale of chattels by a debtor, which as to such creditor is fraudulent: Wilson v. Edwards, 32 Pa. Superior Ct. 295, 300 (1907). In Schmucker v. Lawler, 38 Pa. Superior Ct. 578 (1909) the court said:

"The effect of the act . . . was to render fraudulent and voidable a sale in bulk . . . as against any creditor of the seller who institutes an appropriate proceeding to invalidate such sale. As to such creditor merchandise sold is liable to execution as if no sale had taken place. The act does not prescribe a particular mode of procedure against such property, and the remedy of the creditor is that which existed in favor of judgment creditors before the act was passed."

When the legislature, in the Act of May 23, 1919, in addition to providing that such sale should be fraudulent and void, also provided that the purchaser "shall, at the suit of *any creditor*, be held liable to *the creditors* of the said vendor *as a receiver*" it is a fair inference that they intended a different result than that provided by the Act of 1905. (Italics supplied.) Construing the language literally it would seem that the legislative intent was that if any creditor, by a proceeding either at law or in equity brought within 90 days of a sale, successfully attacked the sale, the purchaser should then be liable as a receiver for all creditors.

In International Shoe Co. et al. v. Duttenhofer et al., 120 Pa. Superior Ct. 102 (1935), where it was attempted to hold a buyer in contempt for failure to pay as directed by the court, it was held that the word "receiver" as used in the Act of 1919 did not mean an officer appointed by the court and over whom it would have summary jurisdiction but it meant only that the purchaser was bound to distribute the fair value of the property between the creditors pro rata, as would an ordinary receiver. See Cowen v. Gruber, 176 App. Div. 905, 162 N. Y. S. 1053. In Miller v. Myers, 300 Pa. 192 (1930), a creditor brought a bill in equity to

set aside a bulk sale. In the first instance the lower court awarded the fund to that creditor alone. Later, other creditors intervened and the lower court then allowed them to prove their claims whether presented within the 90-day period or not, and distribution was made to those who established their claims. The lower court determined that the buyer, as receiver, held for all who established their rights as creditors prior to actual distribution. The Supreme Court did not consider the question because it was not raised in the statement of questions involved. It did hold, however, that only those who claimed a part of the fund for distribution could be considered in determining the total indebtedness, and that those who failed, on notice, to prove their claims, could not be considered.

We conclude that the 90-day provision applies only to the institution of an action for the purpose of having the sale declared void, and that when the sale is held void at the suit of any creditor, the buyer is liable, as a receiver, to all of the creditors of the vendor.

Under the admitted facts, the purchaser has paid the sum of $250 to the Gettysburg Auto Parts Company and $865 to the Farmers and Merchants Bank of New Oxford, the latter sum being in payment of a note of the seller endorsed by the purchaser. The question then arises whether the purchaser may be permitted to participate in the distribution on the basis of these claims. In Miller v. Myers, 300 Pa. 192, 206, it was suggested that the right of the purchaser to participate in the fund on the basis of an indebtedness owed to him individually might be questioned since he was a party to the violation of the Bulk Sales Act, but it was held that the purchaser would be subrogated to the rights of creditors whose claims had been purchased by him to the extent of the payment actually made. In Ticonic National Bank v. Fashion Waist Shop Co., 123 Me. 509, 124 Atl. 308 (1924), it was

held that where the purchaser, in good faith, paid any of the creditors their respective share of the value of the goods, he would be entitled to be subrogated to the rights of such creditor therein and that there was no valid reason why the creditor bringing the action should occupy any better position than it would if its claim had been presented earlier. In Horton v. Bamford et al., 79 N. J. Eq. 356, 81 Atl. 761, it was held that where the consideration paid went to pay debts of the debtor, the purchaser would be protected to that extent, and in Carnall v. Kramer, 194 Iowa 359, 368, 189 N. W. 755, 759 (1922), it was held:

". . . there is no proof of any actual fraud on the part of the appellants. The sale to them is rendered void solely by reason of the terms and provisions of the bulk sales statute. The doctrine of subrogation is applicable to the particular facts in this case." See also note: 80 A. L. R. 713, and 102 A. L. R. 686.

We conclude therefore that Miller, the purchaser, is entitled to participate in the fund to the extent of the pro rata share of the purchase price due to the creditors paid by him.

In its brief, the discount company contends that the sale from Wolford to Miller was on the basis of the wholesale price of the goods, and that the "fair value" of the property would be the retail price, and that therefore a percentage should be added representing the difference between the wholesale price and the retail price. There is no allegation in the pleadings that the sale price did not represent the fair value of the goods sold and there is no evidence to that effect. In any event, it is clear that the fair value of a stock of merchandise in bulk would not be the retail value thereof since the retail value would include, in addition to the wholesale value, the cost of doing business, advertising, sales, and the seller's profit. Under the

pleadings in this case the fair value must be fixed at the sale price at $1,592.05.

Counsel for the discount company further claims a counsel fee to be assessed as part of the costs under the provisions of section 13 of the Sheriff's Interpleader Act of June 22, 1931, P. L. 883, 12 PS §2370. Such counsel fee must be paid by claimant in addition to the amount of the judgment against him. Counsel for the discount company, having been instrumental in raising and protecting a common fund for distribution under the direction of the court, would be entitled to a fee from the fund so raised: Miller v. Myers, 300 Pa. 192, 204 (1930). Since there is no evidence of fraud or bad faith on the part of claimant we will fix a nominal fee of $50 to be paid by him and will hereafter award an additional allowance to counsel for the discount company upon distribution of the fund raised.

And now, July 29, 1949, it is ordered and decreed that judgment be entered in favor of defendant, T. I. C. Consumer Discount Company, and against plaintiff, Ralph J. Miller, for the sum of $1,592.05 and costs, including a fee of $50 to counsel for defendant. It is further ordered that the amount of this judgment shall be paid into court by plaintiff, whereupon said judgment shall be marked satisfied by the prothonotary.

The prothonotary shall forthwith give notice of this order by registered mail to all creditors of Albert L. Wolford named in paragraph 10 of the additional matter in defendant's affidavit of defense, and to all other creditors of Albert L. Wolford by advertisement in one newspaper published in the Borough of Gettysburg, once a week for three weeks, notifying the creditors to file their claims against the fund in the office of the Prothonotary of Adams County on or before August 31, 1949, and that a hearing for the allowance of claims will be held before the Court of Com-

mon Pleas of Adams County on Monday, September 19, 1949, at 10:00 a. m. (D. S. T.).

It is further ordered that any creditor who shall fail to file his claim against the fund on or before August 31, 1949, shall be barred from participation therein.

### OPINION SUR MOTION FOR JUDGMENT

SHEELY, P. J., October 29, 1949.—In an opinion and order filed on July 29, 1949, we held that the sale of a stock of goods from Albert L. Wolford to Ralph J. Miller was void because of the failure of Miller to comply with the Bulk Sales Act of May 23, 1919, P. L. 262, 69 PS §521, and directed Miller to pay into court the sum of $1,592.05 which was determined to be the fair value of the goods sold. That fund is now before the court for distribution among the creditors who filed their claims pursuant to the court's order.

In our former opinion we held that upon the sale being declared void at the suit of a creditor the buyer became liable, as a receiver, to all the creditors of the seller, and that Miller, having paid several creditors of Wolford in full, was subrogated to their rights to participate in the fund. These questions were prematurely raised in the initial proceeding as they were properly questions of distribution. The parties having raised the questions, and the court having considered them, what was said in that opinion on those questions will be considered as a part of this opinion.

The consumer discount company now contends that since it issued a writ of fieri facias under which the sheriff levied upon the goods in the hands of Miller it thereby obtained a lien upon the goods by virtue of which it is entitled to priority of payment over other creditors of Wolford. This would have been true under the Sales in Bulk Act of March 28, 1905, P. L. 62: Wilson v. Edwards, 32 Pa. Superior Ct., 295, 300

(1907) ; Schmucker v. Lawler, 38 Pa. Superior Ct. 578 (1909). That act merely provided that a sale in bulk without compliance with its provisions "shall be deemed fraudulent and voidable as against the creditors of the seller." The sale being fraudulent and void, the situation was the same as though no sale had taken place; i. e., so far as creditors were concerned the goods remained the property of the seller. Being the property of the seller the goods could be levied upon by any of his creditors and they would secure priority in the order of their levies.

The Act of May 23, 1919, which supplanted the Act of March 28, 1905, in addition to providing that the sale should be fraudulent and void also provided that the purchaser "shall, at the suit of any creditor, be held liable to the creditors of the said vendor as a receiver for the fair value of all the property so bought. . . ." It is under this provision of the act that the rights of the parties must be determined. The term "receiver" as here used does not mean an officer appointed by the court and over whom it would have summary jurisdiction, but it means only that the purchaser is bound to distribute the fair value of the property between the creditors pro rata, as would an ordinary receiver: International Shoe Co. v. Duttenhofer, 120 Pa. Superior Ct. 102 (1935). An ordinary receiver would be bound by any liens upon the property at the time he received it and would be required to satisfy such liens in distribution, but when a receiver is appointed the rights of the parties are fixed and no creditor may thereafter secure a preference. The question in point might be answered by determining whether the property was subject to the lien of the levy of the discount company at the time it passed into the hands of Miller as a receiver. The answer to this question is in the negative as the lien of the levy

did not attach until after Miller had purchased the property. Since the act declares that a sale in violation of its provisions is void and that the purchaser is liable to the creditors as a receiver, it would follow that his liability to the creditors became fixed at the time he purchased the goods. That being true, a single creditor could not thereafter secure a priority over other creditors by levying upon the property in the hands of the receiver.

The Act of May 23, 1919, makes no provision for procedure by which a creditor may seek to enforce the liability of the buyer who does not comply with the act. It merely provides that at the *suit* of any creditor the purchaser shall be held liable to the creditors of the vendor as a receiver. A bill in equity would be an appropriate procedure to enforce his liability: Osterweil v. Crean, 344 Pa. 465 (1942) ; International Shoe Co. v. Duttenhofer, 120 Pa. Superior Ct. 102 (1935). Under the Act of 1905 it was held that a writ of fieri facias against the goods was an appropriate procedure: Wilson v. Edwards, 32 Pa. Superior Ct. 295, 300 (1907) ; Schmucker v. Lawler, 38 Pa. Superior Ct. 578 (1909). There are undoubtedly other methods by which the legality of the sale and the liability of the purchaser might be determined. If the discount company had filed a bill in equity there could be no doubt that the property would have been distributed pro rata among all the creditors. Having elected to raise the question by a writ of fieri facias it should not be permitted to obtain a different result whereby it would be preferred over other creditors.

Prior to the Sales in Bulk Act a creditor of the vendor had no rights whatever in connection with the sale of a stock of goods to a bona fide purchaser, and the purchaser had no obligation to the creditors of the vendor. For the purpose of protecting the claims of

creditors and assuring that the purchase price would be distributed among them the Sales in Bulk Act imposed certain duties and responsibilities upon the purchaser. The rights of creditors thereunder, however, are essentially different than their rights against the debtor. In effect, that act constituted the purchaser a trustee of the purchase money with the duty to apply it "to the payment of the bona fide claims of the creditors of the vendor *pro rata* according to the dignity of their several claims as shown upon such verified statement" which he had previously received from the vendor or, in case of dispute or doubt, to pay it into court for distribution "to and among the persons legally entitled thereto." The rights of creditors against the purchaser, or against the fund in his hands, are governed entirely by this statute and rise no higher than to have the fund distributed among them in the manner provided by the statute. No matter what subsequent action the creditor might take to collect his debt from the vendor he could not alter the liability of the purchaser or the method of distribution of the fund in his hands.

To further carry out the purpose of the act, it was provided that if the purchaser failed to comply with its provisions as to notice and distribution, the sale should be fraudulent and void and he would "at the suit of any creditor, be held liable to the creditors of the said vendor as a receiver for the fair value of all the property so bought." This provision is contained in the same section of the act which provides for the initial liability of the purchaser, above quoted, and there is nothing to indicate that the rights of creditors or the liability of the purchaser should be any different than where the purchaser made distribution in the first instance. Having failed to comply with his statutory duty to distribute the purchase money among the

creditors he is held to hold the stock of goods for the same purpose and to be liable to the creditors as a receiver for the fair value thereof. The only liability which he had, however, was to distribute the purchase money pro rata, and the only rights which the creditors had was to receive their pro rata share.

When the Act of March 28, 1905, provided that under such circumstances the sale should be fraudulent and voidable and provided nothing further as to the liability of the purchaser it placed the goods in the same position as though they had not been sold, as hereinbefore stated, which did alter the rights of creditors as defined in the statute. But when the Act of 1919, in addition to providing that the sale should be fraudulent and void, also provided that the liability of the purchaser should be to the creditors as a receiver it retained the distributive rights of all creditors. It is true that a lien upon the goods was secured by the levy, but this lien must be for the benefit of all creditors.

Counsel for both sides have cited authorities from other jurisdictions, the discount company relying upon Pennsylvania Rubber Co. v. Sampson et al., 193 Wis. 77, 213 N. W. 643 (1927) ; Trego County State Bank v. Hillman et al., 104 Kan. 264, 178 Pac. 420 (1919) ; Linn County Bank v. Davis et al., 109 Kan. 758, 202 Pac. 97 (1921). In these cases the language of the statutes being construed is not indicated and it cannot be determined whether that language was similar to the Act of 1905 or to the Act of 1919. The discount company also relies upon Wyman, Partridge & Co. v. Tierney, 42 Wyo. 321, 294 Pac. 781 (1930) ; Musselman Grocery Co. v. Kidd, Dater & Price Co., 151 Mich. 478, 115 N. W. 409 (1908) and National Grocer Co. v. Plotler, 167 Mich. 626, 133 N. W. 493 (1911) in which the language of the statutes was similar to our

Act of 1919. However, we regard the latter cases as unsound. The liability of the purchaser is limited to that of a receiver for the fair value of the goods; he is not liable for all of the debts of the vendor. Where he has paid some creditors of the vendor he has partly discharged his liability as a receiver, at least to the extent of their pro rata share in the fund. How then can another creditor, by attachment, secure a priority over those creditors who have already been paid? At the time of the payment to them there was no priority.

Contrary to the above cases is Middle Tennessee Mills v. Rocky River Coal & Lumber Co., 177 Tenn. 31, 145 S. W. (2d) 787 (1940) where it was held that property conveyed in violation of the Bulk Sales Law passes into the hands of the purchaser charged with a trust in favor of all of the seller's creditors and that an attaching creditor secures no preference. Likewise in Fitz Henry v. Munter et al., 33 Wash. 629, 74 Pac. 1003 (1903) there was an attachment and the court said:

"We also think that the object of this law was to hold the goods of the debtors, under such circumstances, as a trust fund for the benefit of all the creditors, and to hold the purchaser in possession as a trustee for such creditors."

In Southwestern Drug Corp. et al. v. McKesson & Robbins, Inc., 141 Texas 284, 172 S. W. (2d) 485 (1943) there were garnishment proceedings. The court said: "The Bulk Sales Law was enacted for the benefit of all creditors, and it was not intended that any one creditor should derive a superior right by instituting garnishment proceedings." In this case the court points out the value and the place of garnishment proceedings in cases of this type.

"The dominant purpose of the Bulk Sales Law is to protect creditors from illegal transfers. . . . Such

law does not undertake to prescribe in detail the method to be pursued in enforcing rights arising thereunder. It merely announces general requirements. For instance, it does not undertake to announce any rules governing the powers, duties, and liabilities of receivers described therein. However, we may resort to other articles of the Statutes for guidance upon this question. . . . The Bulk Sales Law as amended did not abolish garnishment proceedings *to assist* in enforcing rights arising under the statute, but permits such proceedings as an *additional remedy*, if necessary, to enforce rights arising under the statute." (Italics supplied.)

In Texas Bank & Trust Co. v. Teich (Tex.) 283 S. W. 552 (1926), the court refers to a 1915 amendment to the Bulk Sales Law which made a purchaser a receiver, and held that the amendment fixes the purchaser's liability at the value of the property purchased pro rata to all creditors, whereas prior to the amendment an attaching creditor was entitled to the full amount of his debt if the property attached was of that value. The 1915 amendment to the Texas law worked precisely the same change in the law of that State as the Act of 1919 worked in the law of Pennsylvania, and this case is directly in point in the present proceeding.

We conclude that the consumer discount company had a choice of several methods by which to attack the sale of the assets from Wolford to Miller; that regardless of which method it employed the result, under the Act of 1919, was that Miller should be held liable to the creditors of Wolford as a receiver for the fair value of all the property bought; that Miller's liability as a receiver was incurred at the time he came into possession of the property without compliance with the Bulk Sales Act, and his liability is to distribute the value of the property among the creditors according to

the dignity of their several claims at that time, and that the discount company secured no preference over other creditors by reason of its levy upon the property in the hands of Miller but that the lien of the levy was for the benefit of all creditors of Wolford.

Distribution will accordingly be made to all creditors pro rata. . . .