## Steele *versus* Lineberger *et al.*

1. A scire facias sur judgment was issued against several, judgment was rendered against some of the defendants by default, and in favor of others, on the plea of " *nul tiel record.*"  *Held* that the latter were entitled to costs against the plaintiff.

2. Statutes in *pari materia* are to be construed together and the legislature is presumed to have former statutes before them and to have known their judicial construction.

3. The courts of Pennsylvania do not construe statutes giving costs as penal, but as compensating parties for expenses in defending against unjust claims.

4. Statutes 23 Henry 8, c. 15 ; 4 Jac. 1, c. 3 ; 8 and 9 Wm. 3, c. 2 (Costs), compared and construed.

5. Lane v. Harrold, 16 P. F. Smith 319 ;  Maus v. Maus, 10 Watts 87, remarked on.

October 29th 1872.  Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Armstrong county :* Of October and November Term 1872, No. 68.

To June Term of the Court of Common Pleas Mary A. Steele issued a scire facias sur judgment against John Lineberger and wife and S. C. Steele and wife ; also against A. L. Campbell and a number of other defendants.

Appearances were entered for Lineberger and wife and Steele and wife by one attorney, and by another attorney for A. L. Campbell.  No appearance was entered for the other parties.

[Steele *v.* Lineberger.]

The appearing defendants pleaded " *Nul tiel record*," payment, &c.

On the 4th of June 1868, a jury having been called, the attorney for Campbell withdrew his appearance, and judgment was taken by default against all the defendants but Lineberger and wife and Steele and wife. A jury was sworn between the plaintiff and them. On the same day, after argument, judgment was entered by the court in favor of those defendants against the plaintiff, on the plea of " *Nul tiel record*," and the jury was discharged.

These defendants filed their bill of costs, which was finally taxed at $429.08, and the court (Logan, P. J.) on the 27th November 1871 " ordered that the plaintiff pay the costs of the defendants, in whose favor the judgment was entered on the plea of " *Nul tiel record*."

The plaintiff took a writ of error, and assigned this order for error.

*E. S. Golden*, for plaintiff in error, cited Maus *v.* Maus, 10 Watts 87 ; Stat. 8 & 9 Wm. III. cap. 11, Roberts' Digest 140 ; 23 Henry VIII. cap. 15, sect. 1, Id. 121 ; 4 Jac. I. cap. 3, Id. 129.

*J. Gilpin* (with whom was *J. Boggs*), for defendants in error, cited Haskins *v.* Low, 5 Harris 64.

The opinion of the court was delivered, November 15th 1872, by

SHARSWOOD, J.—At common law no final costs were recoverable by either plaintiff or defendant. The right to them depends, therefore, entirely upon statute. In Dibben *v.* Cooke, 2 Strange 1005, and Queen *v.* Danvers, 1 Salk. 194, it was considered as settled by older decisions, that under the English statutes prior to 8 and 9 Wm. III., c. 2, if one of several defendants is acquitted, he is not entitled to his costs, the courts having construed, under the principle of construction to be presently adverted to, those statutes where they used the word "defendants" to intend only the case of a total acquittal of all the defendants. It was to remedy this to some extent that the Statute of 8 and 9 Wm. was passed. This court has decided, in Maus *v.* Maus, 10 Watts 87, that the first section of that statute, Roberts' Digest 140, which provides that where several persons are made defendants, and any one or more of them shall be upon the trial acquitted by verdict, every person so acquitted shall recover his costs, only applies to the actions enumerated in it, namely : trespass, assault, false imprisonment or *ejectione firmœ*, and not to a proceeding by a scire facias to revive a judgment. This section in words only includes the case of an acquittal by verdict, and the previous Statutes of 23 Henry VIII., c. 15, Roberts' Digest 121, and 4 Jac. 1, c. 3, Roberts' Digest 129, which gave costs to defendants in all forms of action,

[Steele *v.* Lineberger.]

is also in like manner confined to nonsuits and verdicts.    However, the 2d section of the statute 8 and 9 Wm. III. enacts that in any form of action, whenever upon any demurrer judgment shall be given by the court against the plaintiff, the defendant shall have judgment to recover his costs against such plaintiff.    Now, there is no reason why the old decisions upon the statutes of Henry VIII. and Jac. I., that where there were many defendants they intended only a total acquittal of them, should be held to govern in the construction of this 2d section.    It was a very strict and literal adherence to the mere words, and certainly against the spirit and equity of the enactments, and, with all due respect to those ancient authorities, be it said, seemed manifestly to infringe upon the maxim, *Qui hæret in litera, hæret in cortice.*    But while these former statutes make use of the words " defendant or defendants," this 2d section of the statute 8 and 9 Wm. III., carefully, and, it would seem, designedly, uses only the word " defendant " in the singular number. All statutes *in pari materia* are to be construed together, and the legislature is therefore always to be presumed to have had former statutes before them, and to have been acquainted with the judicial construction of them.    It would not be easy to assign any other reason to explain why the language of the former acts was thus studiously changed, than that it was meant to make a difference.    It was intended either that the case of an action against several defendants should not be included in the purview at all, or that defendant meant any defendant.    There are many reasons, as we shall see presently, for preferring the latter construction.    This conclusion is confirmed in view of the decisions referred to above, and the provisions of the first section, which, although applicable only to particular actions, were clearly intended to remedy the mischief produced by these decisions.    Why the legislature, while confining the case of the acquittal of some defendants by verdict to particular forms of actions, chose in judgments upon demurrers to extend the enactment to all actions, it is unnecessary, perhaps, to inquire except as tending to illustrate the general course of the old authorities upon the subject of costs.    In this view, the proviso to the 1st section will throw considerable light upon the question.    By that it is declared that the rule, that where some of the defendants are acquitted they shall recover costs, notwithstanding a verdict against others, shall not apply where the judge, before whom the cause shall be tried, shall, immediately after the trial, in open court, certify upon the record under his hand, that there was a reasonable cause for the making such person or persons a defendant or defendants.    It is very evident that the legislature regarded the imposition of the defendant's costs upon the plaintiff, not, as we have come in process of time, and especially in this state, to consider it, as a matter of justice to the defendant to compensate him for the necessary expenses to which he has been injuriously

22 P. F. Smith—16

[Steele *v.* Lineberger.]

subjected by a proceeding ascertained upon trial to be unfounded in fact or in law, but as a punishment upon the plaintiff for his vexation. But though the title of the statute in question is "An Act for the better preventing frivolous and vexatious suits," yet the preamble went much further, and declared that it "was for the relief of his majesty's good subjects against causeless and unjust suits, and for the better enabling them to recover their just rights." Yet so rigidly were these statutes construed as penal statutes, that in Dibben *v.* Cooke, 2 Stra. 1005, the Court of King's Bench held that an action of trespass on the case was not an action of trespass within the statute, and refused costs to some defendants acquitted by verdict, a judgment by default having been taken against others: "Considering these acts giving costs," said Lord C. J. Hardwicke, "have always been looked on as penal acts not to be extended by equity." In the actions enumerated in the statute, being *ex delicto*, if the plaintiff recovered against any of the defendants, and had reasonable ground, as found and certified by the judge who presided at the trial, to make those acquitted parties, he was relieved from the penalty ; for his action could not be considered as vexatious. In other forms of action, being mostly those in form *ex contractu*, it would be different, for there in joint actions, unless the plaintiff show a good cause of action against all, he could not recover against any, and if it so happened that some escaped, it could only be by reason of a defence personal and peculiar to them, such as infancy, coverture or bankruptcy ; and it would not require a judge's certificate in such case to ascertain that the plaintiff had a reasonable ground for including them as defendants in his writ. There was no more reason, therefore, in this than in the case where the judge certified that the plaintiff should be mulcted in costs. When they come, however, to provide for judgments on demurrer, it is evident that there could be no reasonable, because no legal, ground for making persons defendants in whose favor the cause had been decided, and therefore the provision was general that any defendant should have his costs whenever a judgment on demurrer was rendered against the plaintiff in any form of action. Indeed, this very reason is given for a decision which strongly illustrates the strong leaning of the English courts against awarding costs against a plaintiff, even where the very words of the statute gave them. In Thomas *v.* Lloyd, 1 Salk. 194, it was held upon the construction of this very 2d section of the statute of Wm. III. that it didn't apply to judgments on demurrer to pleas in abatement, but only to demurrers to pleas in bar. "It speaks," say the court, "of suits which are vexatious, which does not appear to the court on pleas in abatement, but on demurrers in bar, where the court sees the merits of the cause, it does."

That the courts in this state do not proceed upon the notion that the statutes giving costs are penal statutes to be strictly con-

strued, but have adopted the more wise and just policy that they ought to be largely and liberally interpreted so.as to do complete justice by compensating parties, who have been obliged to incur necessary expenses either in prosecuting just and lawful claims, or in defending themselves against unjust and unlawful ones, may be seen by the whole current of our decisions upon our own Acts of Assembly upon the subject. It is the true spirit of the legislation of this state. Upon the construction too of the English statutes, wherever not precluded by express authority, the same principle has been recognised. In Lane *v.* Harrold, 16 P. F. Smith 319, where in ejectment the defendant pleaded "not guilty," and when the case was called for trial she disclaimed title to all but an undivided fourth of the land; the judgment was for the plaintiff for three-quarters, and for the defendant for one-quarter, it was held that the plaintiff should recover his costs to the time of the disclaimer and the defendant her costs afterwards. After referring to the provision of the statute Jac. I., that where any verdict happens to pass by any lawful trial against the plaintiff or plaintiffs, the defendant or defendants should recover costs, Thompson, C. J. remarks, "by a fair interpretation of the statute we think the defendants were entitled to their costs. The plaintiff had a verdict against him on his claim for the land in contest, and is within the spirit of the act, if not within its precise terms, and ought to pay costs. This I regard as largely within the practice in this state, if not wholly so, and so we understood it in Tripner *v.* Abrahams, 11 Wright 220."

Applying then this principle of a fair and liberal, in contradistinction to rigid and literal, interpretation to the provisions of the 2d section of the statute in question, we think that the spirit and equity of it require us to hold that a judgment upon the issue raised by a plea of *nul tiel record* is within its purview. Both a judgment upon a demurrer and a judgment upon that issue are pronounced by the court without the intervention of a jury. The reason is, that as a record proves itself, all that is necessary when it is put in issue is for the court to decide by inspection whether the record produced is that set forth in the proceeding, or variant therefrom, or is a record at all of binding effect as declared on or pleaded. There could be no reasonable ground for making any persons parties defendants, who did not appear by the record to be bound by it, and *à fortiori* not where on the trial no record, or none of binding force, is produced. No reason, therefore, even on the principle applied by the English courts in the construction of this section, exists, why the plaintiff should not be mulcted for his unlawful and injurious vexation of any of the defendants, though he may by default obtain judgment against others. The judgment that there is no such record as that declared on or pleaded shows that there was no just cause of action against any of the defendants.

[Steele *v.* Lineberger.]

If we consider the case in hand—a scire facias to revive the lien of an alleged judgment against the original defendant and others made defendants as terre-tenants of the land alleged to be bound by it, it becomes still more palpably unreasonable to hold that a judgment on such an issue in favor of some of the defendants, that there is no such judgment, and, therefore, no such lien, should not avail to give them costs against the plaintiff, though he may have obtained judgment against the original defendant or some of the terre-tenants; for having parted with the land they may no longer have any interest to take defence; yet the result shows conclusively that if they had so taken defence the determination must have been in their favor. The rule is well settled in England that when one of the several defendants lets judgment go by default, and the other pleads a plea which goes to the whole declaration and shows that the plaintiff had no cause of action, if the plea be found for the defendant who pleaded it, he shall have costs, and being an absolute bar, the other defendant shall have the benefit of it, and shall not pay costs to the plaintiff: see Brightly on Costs 98, and the authorities cited there. If this were not the rule it is plain that all that a plaintiff need do in order to protect himself from paying costs to the defendants in case he should not succeed, would be to make some friend a defendant, who would suffer judgment to go against him by default.

From the examination I have been under the necessity of giving to this case I have been led to the conclusion that an Act of Assembly to consolidate and simplify the whole law upon the subject of costs in different actions and legal proceedings is much needed, and if some gentleman of the bar, of sufficient practical experience, would prepare such an act for consideration and adoption by the legislature, it would confer a great service on the profession, the courts and the public.

Order affirmed.