# Black's Appeal.

1. An appeal lies from an order or decree of court, dividing the costs between the parties to an issue in the nature of an interpleader to determine the ownership of goods in the hands of a garnishee, against which an attachment execution has issued.

2. Where the court frames an interpleader to determine the ownership of goods attached as above, the costs follow the verdict and judgment as in ordinary common law cases, and the court has no power to make any order the effect of which will be to prevent the winning party from proceeding to collect full costs from the losing party.

April 16, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, .GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Luzerne county:* Of January Term, 1884, No. 426.

This was an appeal by F. G. Black from an order of said court, directing that one half the costs incurred in a feigned issue awarded by the court, to test the ownership of certain money which had been attached in the hands of a garnishee, and paid into court, be paid by the plaintiff, and the other half be paid by the defendant. The verdict in said feigned issue was in favor of the defendant.

The facts of the case are fully set forth in the opinion of the court below, WOODWARD, J., as follows:

William M. Miller, the assignee of a judgment against George M. Black, issued an attachment execution thereon and summoned O'Boyle & Wandell as garnishees. On the 6th of December, 1881, the garnishees filed their answers to the interrogatories directed to them by Miller, the plaintiff. In these answers and the affidavit filed at the same time, they state, in substance, that they have in their hands the sum of four hundred dollars, which they had supposed belonged to G. M. Black, the defendant, but that they have received

notice from Frederick G. Black that the money in question (the proceeds of the sale of a lot of cabbages) belongs to him and not to G. M. Black. They accordingly ask leave to pay the money into court.

On the same day the court directed the garnishees to pay in the money, and thereupon granted a rule on W. M. Miller and Frederick Black, to appear in court on Monday, the 12th day of December, to show cause why an issue in the nature of an interpleader should not be framed between them, to determine the ownership of the fund.

On the 12th December, 1881, the rule thus granted was made absolute, and it was further ordered as follows: "That said case be put at issue between said William M. Miller as plaintiff, and said Frederick G. Black as defendant, by the said plaintiff filing his declaration within fifteen days from this date, and serving a copy of the same on the said defendant, and thereupon defendants to plead within five days after such service, and serve a copy of the same on the plaintiff, who shall file his replication thereto within five days thereafter, and the issue thereby made shall be set down among the issues at the head of the trial list for next term."

The issue thus formed came on for trial at October Term, 1883, and resulted in a verdict in favor of Frederick G. Black, the defendant, who then filed his bill of costs amounting to $274.43. The plaintiff now asks to have this bill disallowed and set aside, on the ground that under all the circumstances of the case, it would be unjust and against equity to compel him to pay it.

The Act of 10th April, 1848 (Pur., 643, pl. 48), commonly known as the Sheriff's Interpleader Act, and originally applicable to the counties of Philadelphia and Luzerne, but subsequently extended throughout the Commonwealth, after providing the method in which issues are to be framed and tried, proceeds to say that it shall be the duty of the court "to exercise for the adjustment of such claim, and the relief and protection of the sheriff or other officer, all the powers and authorities necessary, and made such rules and decisions as shall appear to be just, under the circumstances of the case, *and the costs of all such proceedings shall be in the discretion of the court.*"

In the case of Mansley *v.* Moore, 1 W. N. C., 268, it was held, by the Court of Common Pleas of Philadelphia, that "where the execution plaintiff has not been guilty of oppression, it would be a hardship to compel him to pay costs." In Bank *v.* Emerson, 7 W. N. C., 392, the court announces the same doctrine in the following language: "Costs against an unsuccessful defendant in a sheriff's interpleader under the

Act of 1848, are not of course, but are in the discretion of the court." The rule which we have adopted is, to allow costs to a successful claimant where it is apparent that the defendant in the issue—the plaintiff in the execution—has proceeded upon insufficient grounds, where he has caused the goods to be levied on, and persisted in the seizure under circumstances which afforded no adequate presumption that the title was in the defendant, where his conduct has been characterized by oppression or indifference to the rights of third persons. Where, on the contrary, the facts developed on the trial show that the creditor had good reason to believe that the goods were the goods of the defendant in the execution, as, for example, when they are found in his possession, under circumstances which give rise to a presumption of ownership, costs are not awarded against the defendant. We refer, also, to the case of Dewees *v.* Evans, 7 W. N. C., 573.

It would seem clear from the language of the statute as well as from the adjudicated cases to which we have referred, that the costs in interpleader cases, and in other feigned issues, do not necessarily and of course follow the judgment, as in other civil actions, but that they are within the control of the court, who are to exercise a sound discretion according to the circumstances.

In the present case, the fund in dispute was in the hands of third parties, who were made garnishees. These garnishees state under oath, that, up to the time of the service of the attachment, they supposed and believed that this money belonged to G. M. Black. And, upon the trial of the case in court, it was shown in behalf of the plaintiff, that G. M. Black had, at various times and to various parties, claimed to have been the real lessee of the premises, upon which the produce in question was grown, and that to one person he had said, that the lease was made in his son's name for the reason that he himself could hold no property in his own name. It was also proved, that to one witness he had stated that the particular sum of money in controversy belonged, and should be paid to himself. These facts, and many others to the same effect, were sworn to by the witnesses for the plaintiff, and while they were controverted and denied by the defendant and his witnesses, they are recalled now, to show that the plaintiff was not without good reasons for supposing that the money upon which he laid his attachment belonged to G. M. Black, whose creditor he was.

But while we are disposed to agree that the plaintiff has done nothing which was oppressive or unreasonable, we must not forget that the defendant had the verdict. The jury have found that the fund in court belonged not to G. M. Black,

but to his son, Frederick G. Black, the claimant. To relieve the unsuccessful party from the payment of the costs, because there was probable cause for believing, as he did, that this money was the property of his debtor, and to put them upon the successful party, whose theory of the case has been adopted and approved by the verdict of the jury, would seem to be anomalous and arbitrary.

The true view of the case would seem to be this. The issue was directed by the court, for the purpose of ascertaining the real ownership of the money in the hands of the garnishees. The witnesses who were sworn were called for the purpose of affording the necessary information on this question. A comprehensive view of all the testimony results in the conviction that, while the plaintiff had abundant reason for believing that the fund was the property of his debtor, it was, in point of fact, as legally ascertained by the jury, the money of another. Under these circumstances it seems to us equitable, that the costs and expenses should not be borne exclusively by either party, but should be divided equally between them.

It is therefore ordered that one half the costs, including the witness fees on both sides, be paid by the plaintiff, and that the other half thereof be paid by the defendant, and the rule is discharged.

The defendant took this appeal, assigning for error the said order.

*John Lynch* and *John T. Lenahan*, for the appellant.—The court below relied on the Act of April 10, 1848 (Purd. Dig., 643, pl. 48), and cited only cases arising under that Act, which, however, is applicable solely to interpleaders sought by the sheriff, and has no application to this feigned issue. In such cases as this the unsuccessful party must pay the costs: Brownfield *v.* Canon, 1 Casey, 299; McMunn *v.* Carothers, 4 Clark, 354; Richards *v.* Salter, 6 Johns. Ch., 445; Hipple *v.* Hoffman, 2 Watts, 85; Snyder *v.* Kunkleman, Id., 426. These authorities establish that costs follow the verdict, and that the court is not clothed with the discretionary power of imposing the costs on the parties in such proportions as it sees fit. The law governing this case is analogous to the practice in issues of devisavit vel non, where the verdict carries costs: Koppenhaffer *v.* Isaacs, 7 Watts, 170; McMasters *v.* Blair, 7 Casey, 467.

*W. H. McCartney*, for the appellee.—The feigned issue in this case came from the common law power of the court, and under the common law costs were not given to either party; nor is there any statute in force in Pennsylvania giving the

defendant costs in a case of this kind, nor any law of any kind preventing the proper exercise of the discretion of the trial court over the costs of a feigned issue.    In certain cases the defendant first took costs by virtue of 23 Hen. VIII., c. 15 (Rob. Dig., p. 121), but under that Act the discretion of the Judge was recognized as well as in all subsequent British statutes relating to costs, viz.: 4 Jac. I., c. 3, Rob. Dig., 129; 22 and 23 Car. II., c. 9, Id., 139;  8 and 9 Wm. III., c. 12, Id., 139.    And this discretion has been recognized and affirmed by this court in McCauley's Appeal, 5 Norris, 187, holding that " no appeal lies from a taxation of costs by the Court of Common Pleas to this court: " Purd. Dig. 591, 595.

Mr. Justice STERRETT delivered the opinion of the court, May 19, 1884.

In the feigned issue to determine which of the two claimants was entitled to the fund in court, the verdict and judgment were in favor of the defendant, who thereupon filed his bill of costs amounting to $274.43.    On application of plaintiff in the issue, the court ordered " that one half of the costs, including witness fees on both sides, be paid by the plaintiff, and the other half by the defendant."    From that order the defendant appealed, and his contention is, that the costs being an incident of the judgment the court had no power to impose any part thereof on him.

No question is raised as to the validity of the judgment or regularity of the proceedings leading thereto.    If there was, a writ of error would be the appropriate remedy.    The only subject of complaint is the order made after rendition of the judgment, and that is clearly reviewable, on this appeal: Snyder *v.* Kunkleman, 2 Watts, 426.    It was there held that after verdict and judgment in a feigned issue to determine a contested right to proceeds of sheriff's sale, a decree of court, as to payment of costs of the issue, is the subject of revision on appeal, but not on a writ of error to the judgment.    There is nothing, therefore, in the suggestion that appellant has mistaken his remedy.

At common law no costs were allowed, the amercement of the vanquished party being his only punishment; but, in assessing damages, costs were generally considered by the jury and included in their verdict.    Costs, *eo nomine*, were first given to plaintiffs by the Statute of Gloucester, 6 Edw. I., c. 1.    Afterwards, by the Statutes 23 Hen. VIII., c. 15, 4 Jac. I., c. 3, 8 and 9 Wm. III., c. 12, and 4 and 5 Anne, c. 16, the successful defendant was allowed the same costs as the plaintiff would have been entitled to, if he had recovered: 4 Minor's Institutes, 788; 3 Blackstone, 399.    With some statu-

tory limitations and qualifications, which it is unnecessary to specially notice, the rule thus established in England has always been recognized and enforced here. In equity the practice is different, but in actions at law the general rule undoubtedly is that costs follow the judgment; and hence it is incumbent on an unsuccessful litigant, who claims either partial or entire relief from the costs of suit, to point to the statute that warrants exemption from the burden. The order complained of in this case appears to have been based on the special provisions of the Sheriff's Interpleader Act, and decisions thereunder. That Act, it is true, declares "the costs of all such proceedings shall be in the discretion of the court;" but this clause refers solely to proceedings and issues under that Act, and has no application whatever to other feigned issues directed by the court for the purpose of determining disputed questions of fact according to the course of common law. When the issue in question was made up, it was like any other issue of fact presented by the pleadings in an action at law, and subject to the same rules of practice as to trial, judgment, and all the incidents thereof. The question was whether the money in court belonged to the plaintiff or to the defendant. The jury declared by their verdict that it belonged to the latter, and judgment was accordingly entered in his favor on the verdict. Like ordinary judgments in actions at law, it carried costs, and the court erred in making an order, the effect of which was to prevent appellant from proceeding to collect full costs from the unsuccessful plaintiff in the issue.

> The order of the court below is reversed and set aside, at the costs of the appellee, and it is ordered that the record be remitted for further proceedings according to law.