## Ashton v. Pittsburgh Consolidated Coal Co.

*John Evans, Sr.,* for petitioner.

*Thorp, Bostwick, Reed & Armstrong; H. Eastman Hackney, Reed, Smith, Shaw & McClay;* and *Rose, Eichenauer, Stewart & Lewis,* for respondents.

PATTERSON, J., June 3, 1949.—This case is before us on a dissenting stockholders' petition that they be allowed costs incurred in the appraisal of stock under the Business Corporation Law of May 5, 1933, P. L. 364, sec. 908(*b*), as amended by the Act of March 31, 1941, P. L. 13, 15 PS §2852-908, providing:

"The costs of such appraisal, including a reasonable fee to the appraisers, shall be fixed by the court, and shall be borne by the surviving or new corporation unless, in the opinion of the court, the action of any shareholder in refusing the offer of the corporation has been arbitrary, vexatious, or in bad faith, in which case the costs shall be assessed in the discretion of the court."

It is to be noted that in the first sentence the act declares the costs of such appraisal shall be fixed by the court and shall be borne by the surviving or new corporation, and later, at the end of the paragraph, de-

clares that under certain conditions the costs shall be assessed in the discretion of the court. The difference between the costs as fixed by the court and the assessment of costs in the discretion of the court would seem significant. In one event, all the costs fixed by the court shall be imposed upon the surviving corporation. In the alternative situation they may be assessed against either or both parties as the court, in its discretion, may deem just. Inasmuch as there is nothing in the record indicating bad faith or an arbitrary or vexatious attitude, it is incumbent upon the court to fix the costs (i. e., define what items may be taxed as costs), and to impose them upon the surviving corporation. It, therefore, becomes largely a problem of what may properly be allowed as costs.

The question is not without difficulty. It is obvious that the statute cited was intended by the legislature as a liberal measure in behalf of dissenting stockholders in order that they may be given equitable relief as to costs involved in asserting their statutory rights as against the majority shareholders approving of the corporate action. But since 1933 a general statute as to costs has been enacted, that is, the Witnesses Act of July 21, 1941, P. L. 425, 28 PS §416.1 et seq., which declares a statutory mandate for any court of record as to the disposition of costs, and the title of which reads:

"An Act to establish a system uniform throughout the Commonwealth for the compensation of witnesses, regulating the amount, payment and taxation as costs thereof, and repealing inconsistent legislation." .

This act was intended as a general law on the subject, superseding earlier acts: Walker v. P. R. R., 151 Pa. Superior Ct. 80, 82.

In the erection of our juridical structure, the doctrine of costs has been woven into the same but always

in derogation of the common law, because at common law no costs were awarded. Juries considered them usually in the quantum of damages; but eo nomine costs were first allowed by the Statute of Gloucester (6 Edward I), and then only to plaintiff. Later a successful defendant came under the statutory benignity as to costs by the Statute of 23 Henry VIII, ch. 15, reënacted as to nonsuits by 8 and 9 William III, but only in regard to certain types of action. The Statute of 4 James I, ch. 3, extended prior enactments so as to award costs to a defendant in all cases where plaintiff might have costs if judgment in his favor should be given. The Statute of 4 and 5 Anne, ch. 14, first gave costs to defendants generally. While the Statute of Gloucester is in force in Pennsylvania, there seems some doubt as to whether 4 and 5 Anne is. However, Justice Sterrett in Black's Appeal, 106 Pa. 344, at pp. 348-49, declared that the rule established by the English statute has always been recognized and enforced here, with some unimportant qualifications. He follows that declaration with this significant statement: "In equity the practice is different." He further declares: "it is incumbent on an unsuccessful litigant, who claims either partial or entire relief from the costs of suit, to point to the statute that warrants exemption from the burden."

Thus the right to recover costs in this Commonwealth, being in derogation of the common law, rests entirely on statutory enactments: Morganroth's Election, 346 Pa. 327, 328; Miller v. Myers, 300 Pa. 192, 204; Whitney et al. v. Jersey Shore Borough, 266 Pa. 537, 547; Steele v. Lineberger, 72 Pa. 239, 240; Musser v. Good, 11 S. & R. 247, 249; Walker v. P. R. R., supra, p. 83.

In construing such statutes, the courts of the Commonwealth have adopted and often affirmed the policy

of a liberal interpretation: Tunison v. Commonwealth, 347 Pa. 76, 79; Steele v. Lineberger, supra; Rush v. Allegheny County, 159 Pa. Superior Ct. 163, 166; Ford v. Neely, 59 Pa. Superior Ct. 652, 655.

The necessity for statutory authority and the rules of construction are essential in equity as well as in law. There is, however, a difference in equity, that the costs are within the sound discretion of the court, to be determined according to the justice of each particular case: Gordon v. Hartford Sterling Co., 350 Pa. 277, 286; National Accident and Ins. Co. v. Workman's Circle, 289 Pa. 164, 169; Mead v. Sherwin, 275 Pa. 146, 155; Miller v. Dilkes, 251 Pa. 44, 52; Pennsylvania Co. for Ins., etc., v. The Philadelphia National Bank, 195 Pa. 34, 37; Stocker v. Hutter, 134 Pa. 19, 27; Home P. S. & L. Assn. v. McCarter, 68 Pa. Superior Ct. 120, 122.

No court, including the chancellor, can usurp the legislative function as between party and party by dignifying, as costs, charges to which no statute has accorded the character of costs: Whitney v. Jersey Shore Borough, supra, pp. 547, 548.

The instant case, being in equity, must, in our opinion, be adjudicated in all its aspects in the light of equitable doctrines. It is incumbent upon us, then, to determine whether or not there is any tenable doctrine by which it may be said that equity transcends a general statute such as the Act of 1941 in order that justice may be done as between party and party as to costs of the nature here involved.

Authorities from sister jurisdictions are not helpful because the authority to impose costs is statutory in both law and in equity, the difference being that in equity the statutes generally delegate the authority to impose costs to the discretion of the court. Other jurisdictions are similarly bound. In a recent case from

Delaware is a statement of the legal tenet involved, which is typical.

"The general rule is, in actions at law, the prevailing party is entitled to costs as a matter of right; while in equity the allowance of costs is largely a matter of discretion": Bodley v. Jones, 65 A. (2d) 484, 487, (Del.).

The term "costs" is a somewhat comprehensive one and, in its usual or ordinary acceptation, involves witnesses where witnesses can be called and examined, officers' fees, and other expenses for litigation, and when committed to the discretion of the court below, their decision will not be disturbed on appeal. In construing the Orphans' Court Partition Act of June 7, 1917, P. L. 337, sec. 35(a), 20 PS §1524, which provides that: "The costs in all cases of partition . . . to be taxed by court", it was said that the allowance of costs would not be disturbed in the absence of evidence upon the record demonstrating an error of law in the taxation: Sivak's Estate, 161 Pa. Superior Ct. 323, 328; Hartley v. Weideman, 28 Pa. Superior Ct. 50.

Costs have been variously defined as "The expenses incurred by the parties in the prosecution or defense of a suit": Bouvier's Law Dict., p. 689. Also, as statutory allowances to a party for his expense incurred in the action: 15 Standard Pa. Practice 444, §2; 14 Am. Jur. §2. A Pennsylvania definition declares costs to be a legal allowance to a party for expenses incurred in conducting his suit: Musser v. Good, supra, at p. 247. Another Pennsylvania definition is "certain allowance authorized by statute to reimburse the successful party for expenses": 15 Standard Pa. Practice, supra, footnote 3.

We are reluctant to accept definitions which seem to make the word "costs" synonymous with "expenses", because lawyers' fees are proper expenses of litigation but are rarely allowed as costs. As stated by Justice

Kephart in Hempstead et al. v. Meadville Theological School, 286 Pa. 493, at p. 495:

"As a general rule in Pennsylvania each party to adversary litigation is required to pay his own counsel fees. As stated by Gibson, J., in Alexander v. Herr, 11 Pa. 537, 'if clients could pay attorney's fees out of the pockets of their opponents, they would pay most liberally'. Nor is there any law in Pennsylvania which will warrant the payment of such fees or expenses, incident to the preparation for trial, as 'costs of the case'."

"It is ordinarily true that counsel fees of a successful litigant are not costs, and cannot be collected from the sum recovered unless expressly authorized by statute. In the present case, the proceeding was equitable, and one, acting for all, raised the receivership and compelled an accounting of the moneys improperly withheld. This situation makes applicable the distinction pointed out in Whitney v. Jersey Shore Boro., 266 Pa. 537, following Winton's App., 87 Pa. 77. The same principle, and the one controlling here, is thus stated in Hempstead v. Meadville Theo. S., 286 Pa. 493, 495: 'Where the services protect a common fund for administration or distribution under the direction of the court, or where such fund has been raised for like purpose, it is liable for costs and expenses, including counsel fees incurred.' . . .". Miller v. Myers, supra, at p. 204.

In conclusion, therefore, we have two statutes, upon one of which we must predicate our position. In our opinion, the Business Corporation Law of 1933 must control our procedure. One contention of respondent is that the Witnesses Act of July 21, 1941, P. L. 425, 28 PS §416.1-10, being a general revision of the cost system in any court of record, repealed the Business Corporation Law insofar as it provided a system of costs imposition. With this we cannot agree. The rule

that such is the effect of the later enactment applies only where the subsequent act provides a complete and comprehensive method of doing what the former statute provided and the two methods cannot be harmonized: Orioles Liquor License Case, 146 Pa. Superior Ct. 464, 467; Appeal of Visitors to the Allegheny County Home, 109 Pa. Superior Ct. 519; Shibe's Case, 117 Pa. Superior Ct. 7, 12. "Rarely, if ever, does a case arise in which it can be justly held that a general statute repeals a local statute by mere implication": Mitchell, C. J., in Commonwealth ex rel. v. Brown, 210 Pa. 29, citing Malloy v. Reinhard, 115 Pa. 25, 31. The inherent or ancillary power of a chancellor is not discussed in or affected by the general terms of repeal expressed in the Act of 1941, and certainly no implied repeal appears.

Resorting then to the authority of the Business Corporation Law of 1933, we are of the opinion that it plainly commits to the discretion of the chancellor the adjustment of the equities in the matter of costs in the case at bar. The judicial history of the Court of Chancery from its earliest days when the Aula or Curia Regis administered justice in the person of the King, whose chief officer of trust and confidence was his Chancellor, has woven into the equitable structure a costs system that empowers a chancellor in his discretion to adjudicate costs between the parties. This is especially sound in an extra-judicial aspect of the case such as is here presented in appraisal of stock under the Business Corporation Law of 1933. Equity is part of the law of Pennsylvania. Sometimes the distinction between law and equity may seem weakened by the fact that certain causes are cognizable in both. Whether the right of a plaintiff to his relief is absolute or of grace is one of the fundamental functions of equity not disturbed by the often attenuated differentiation.

There is a sound reason why the Act of 1941 does not affect the assessment of costs by the chancellor, in addition to the statutory authority to that effect. It is the fact that the appraisal of a dissenting shareholder's stock is in the nature of a supplemental proceeding after his right to appraisal has been equitably adjudicated, as here it has been. He is entitled to the fair value of his stock as a matter of right. To ascertain its fair value, the process of appraisement is provided. It is the costs of the appraisal that the statute says the court shall fix. The compensation of the appraisers has been fixed and paid. It is not contended, nor do the petitioners claim, that the fees of their lawyers should be taxed as costs. But there is no conceivable reason why a dissenting stockholder should not have his just costs taxed and paid as the statute directs. What the just costs are is a matter committed to the chancellor. Ordinarily the procedure would be to tax the costs in the prothonotary's office subject to appeal to the court: Equity Rule 85; Allegheny County Common Pleas Rule 77. But in the instant case costs must first be fixed by the court. To proceed by petition, then, was the method to be pursued. The obvious reason is that there are no record costs, filing fees, service fees, sheriff or court officers' fees, or other standard costs, but only the costs of the appraisal. Equity Rule 82, defining costs, is of no great aid, except that it concedes if there are no applicable statutory provisions, the court shall fix the costs. Here the statutory provision sets the same pattern of procedure. We may pass then to the analysis of petitioners' bill of costs and fix those we deem to be just.

We are of opinion that under the circumstances the fees for expert accountants and expert witnesses as to fair value are properly allowable. As stated in respondents' brief, the expert accountants spent many days examining books and records of the company and were

afforded by the company full access to such data as would be helpful and a company accountant was delegated to assist petitioners' witnesses. In any aspect, however, the records were the source of competent relevant testimony in behalf of petitioners' cause, viz., to ascertain the fair value of the stock. Petitioners could not justly be required to blindly accept respondents' figures, trial balances or annual statements, but must reasonably be allowed exploration of assets and liabilities as near as may be in the limited time they had to determine asset value, upon which factor petitioners relied to no inconsiderable extent and which was an important fair value factor in the ultimate appraisal. We cannot accord with respondents' contention that experts' fees must be eliminated as has been done in other jurisdictions. The testimony of expert accountants, expert real estate witnesses, and expert opinion on the value of boats, docks, barges, and marine ways was indispensable to the proof of petitioners' contention. That they were not successful in establishing the highest value contended for is immaterial. Their testimony, together with that of respondents' witnesses, was all considered by and was helpful to the appraisers.

We do not by this opinion intend to lay down a legal tenet or to establish a precedent recognizing generally as taxable costs the fees of expert witnesses. That would open the way to exorbitant and extortionate bills of costs which might well carry into the realm of fraud. On the law side of the court the Act of 1941, hereinbefore discussed, fixes expert fees, to wit, the legal per diem. Any excess must be paid by the employer. In equity it depends upon the nature of the cause and a statutory authority either fixing fees or reposing in the chancellor discretionary power to do so, and in so doing the chancellor must exercise sound

discretion as to how much, if any, is to be allowed, subject to review on appeal if abused.

Reviewing the testimony in the instant case, we find the firm of Bachrach, Sanderbeck & Company, C. P. A., represented by Mr. Bachrach and two of their employes, both of whom are certified accountants. About 90 pages of testimony is given representing a vast amount of explorational effort, financial data, and exhibits to the number of 25. It is unfortunate that the accounting firm when involved in litigation does not keep a per diem account for the court's consideration, as almost all the statutes fixing taxable costs are so formulated. Instead, the accountants insist upon the court and counsel accepting figures based on "our own judgment as to the value of the services rendered", not in our contemplation a wholly disinterested judgment. But having done a great deal of work, and having qualified to testify, and having testified as aforesaid, we are constrained to consider their services as essential and of value in the circumstances of this particular case and may justly and equitably be allowed as costs.

The same may be said of the bill of Blum, Weldin & Braun, engineers. The appraisers accorded authority to the testimony of Mr. Weldin, though they violently disagreed with his theory of evaluation of coal in place when predicated upon a future rate of depletion and its future accessibility. We believe these engineering charges in the particular circumstances of the instant case may be equitably and justly fixed as costs.

To the same effect is our opinion as to the fees of James S. Pates, mining engineer; John J. Curran and J. Winfield Reed, real estate agents, and Captain R. J. Hiernaux, riverman and boat builder.

We are not unmindful of the fact that expert testimony is the lowest form of proof and sometimes no proof at all. But there are causes which are susceptible of no other character of proof and we must accept it

when it is the best we can get. The witnesses were called upon to explore a vast theater of industrial operation, extending over several States, involving transportation facilities, especially river transportation, and to comprehend its magnitude required assiduous and concentrated study. Were we to reject it, then dissenting stockholders could either take the corporate offer for their stock or accept the open market quotations. Neither can be ipso facto the fair value contemplated by the statute, although factors for consideration. But the real fair value emerged from a coordinated study of those and other factors, among them asset value, and to establish this the evidence of the experts was required and should be taxed as costs.

As to the balance of the costs, we cannot accord merit to petitioners' claim to the fees paid the Recorder of Deeds of Allegheny County for a certified copy of the consolidation or merger agreement of the Pittsburgh Coal Company of 1916. This is available as a public record and a certified copy is a matter of convenience. Nor can we accept a copy of the record of the stenographic reporter procured by petitioners for their own use. This likewise was a matter of convenience. A like disposition must be made of the various items procured from attorneys and similar sources for abstracts of records and assessments in various localities where respondent company owned property. We cannot allow the cost of printing briefs for the use of appraisers. It may be argued that respondent corporation printed an elaborate brief in convenient form for the use of the appraisers and the court and that petitioners should be compensated for printing their brief in similar fashion. This, in our opinion, is not a sound reason for including such printing as costs to be taxed and paid by respondent corporation. Accordingly, we revise the bill of costs filed and fix the taxable costs in the proceeding at bar as follows:

Bachrach & Sanderbeck — Accountants —
Services in procuring data from books and
records of Pittsburgh Coal Co. as to assets
of the corporation, and presenting testimony
to appraisers as follows:

| | | |
|---|---|--:|
| 10/ 9/46 | | $1,000.00 |
| 11/ 8/46 | | 500.00 |
| 1/13/47 | | 750.00 |
| 4/13/47 | | 750.00 |
| 6/ 6/47 | | 750.00 |

6/ 4/47  Messrs. Blum, Weldin & Braun, Mining
Engineers—
Professional services in examination of
properties of Pittsburgh Coal Co., prepar-
ing data and presenting testimony for the
appraisers as to the values of the mines,
mining equipment and coal lands of Pitts-
burgh Coal Co.

| | | |
|---|---|--:|
| 4/ 9/47 | | 750.00 |
| 6/11/47 | | 2,497.92 |
| 9/22/47 | | 1,366.94 |

5/19/47  James S. Pates, Mining Engineer and Coal
Operator—
Professional services in examining mining
operations of Pittsburgh Coal Co. and coal
properties and presenting testimony before
appraisers as to the value of corporate
assets 530.76

5/20/47  John J. Curran, Real Estate Agent —
Professional services in examining coal
properties of Pittsburgh Coal Co. and pre-
paring data for use in presenting to the ap-
praisers evidence and information as to the
value of the assets of Pittsburgh Coal Co. 221.62

4/20/47  J. Winfield Reed, Real Estate Agent—
Professional services in examining coal
lands of Pittsburgh Coal Co. and presenting
testimony as to the value of such lands be-
fore the appraisers 500.00

4/20/47  Captain R. J. Hiernaux, River Captain and
Boat Builder—
Professional services in presenting testi-
mony before the appraisers as to the value
of the boats, barges and marine-ways of
Pittsburgh Coal Co. 50.00

$9,667.24

We may add, in order that this proceeding may be conclusive, that as of the above number and term the claims of all dissenting stockholders were consolidated and were referred to the appraisers for determination of the fair value of their stock. It follows, therefore, that this adjudication of costs is intended to and does comprehend within it the claims of all dissenting stockholders for allowance of costs. Accordingly, every dissenting stockholder is by this opinion precluded from application for the payment of other or additional costs.

NOTE.—An appeal to the Supreme Court was discontinued August 27, 1949.