## Schultz et al. *v.* Mountain Telephone Company, Appellant.

Argued January 3, 1950. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Mark McQuillan*, with him *Leon Ehrlich*, for appellant.

*John E. Walsh, Jr., Edward Trexler* and *Edwin L. DeLong* did not appear or file a brief for appellee.

OPINION BY MR. JUSTICE LINN, March 20, 1950:

Dissenting shareholders of The Mountain Telephone Company, who were opposed to the sale of its assets to Conestoga Telephone and Telegraph Company, applied, pursuant to Section 5 of the Act[1] of May 20, 1921, P. L. 949, 15 PS 2415, for the appointment of "three disinterested persons to estimate and appraise the damage, if any, which such . . . stockholders have suffered or

---

[1] The title to the Act is, "An Act Authorizing certain telephone companies and certain telephone and telegraph companies to acquire all or any part of the capital stock, franchises, property, rights, and credits of each other, and to purchase, lease, or otherwise acquire all or any part of the lines, systems, rights, privileges, municipal consents, and corporate franchises of each other."

sustained by reason of" such sale. Three appraisers were appointed; after hearing and investigation, a majority of them reported (1) that the dissenting shareholders "have suffered or sustained no damage by reason" of the transaction and (2) that the market value of the common stock of The Mountain Telephone Company at the pertinent date was $250 a share. The third appraiser filed a separate report fixing a higher market value. Exceptions to the report were filed and, after argument, the court dismissed them and confirmed the report. The court then conducted a hearing "to receive further testimony relating to the allowance of fees and expenses," and made an order taxing as costs, payable by the corporation, certain items amounting to $3,524.10 of which $1,800.00 constituted fees for the three appraisers and $1,200.00 for fees of their counsel. The Mountain Telephone Company then presented in the court below a petition for re-argument of the issue of costs which the court declined to grant. In their petition for the re-argument they stated four objections which may be summarized briefly: (1) the Act authorizing the proceeding does not authorize the imposition of costs; (2) the court had no inherent power by the common law to impose costs; (3) this proceeding is statutory and not within the equity jurisdiction in which the court has control of costs; (4) the fourth objection is stated as follows: "The action of the dissenting stockholders was unfounded, insincere and vexatious, for even though their bad faith need not be shown, it is strongly suggested, in view of the Public Utility Commission's approval of the transaction and the failure of the dissenting stockholders to exercise other available remedies for the benefit of all the stockholders; in other words, they were trying to enrich themselves at the expense of the assenting stockholders who had in sincere good faith approved the transaction."

The Mountain Telephone Company appealed and the question now is whether the court had the power to

impose these costs on the corporation or whether costs followed the losing parties, the dissenting shareholders, who, as the appraisers reported, sustained no damage.

In reaching its conclusion the learned court below referred to no decisions by our appellate courts but relied on a Delaware case [2] which we must lay aside because the Delaware statute [3] expressly conferred power on the court to tax the costs.

The majority of the shareholders, acting in good faith, had the right to vote the disposition of all the assets and the dissolution of the corporation.[4] The Act of 1921, P. L. 949, furnishes a remedy for dissatisfied shareholders by authorizing them to sue the majority shareholders for damages resulting from their action. The statute provides that the appraisers "or a majority of them, shall appraise the share or shares of said stockholders in the said company at the market value thereof, without regard to any depreciation resulting from said purchase and acquisition. Said corporation may, at its election, either pay to the holder of such stock the amount of damages so found or the value of the stock so ascertained. Thereupon said stock shall be transferred to and be vested in the acquiring corporation." In this case no damages were payable. The dissentients of course will receive the market price for their stock. The statute provides a special remedy by which dissentients may recover for damage sustained by wrongful acts of the majority in disposing of the assets of the cor-

[2] In re *General Realty & Utilities Corporation*, 52 Atl. 2d 6 (1947).

[3] 43 Dela. Laws, c. 132, sec. 16, page 468, amended section 61 of Chapter 65 of the Revised Code (section 2093 of the Code) as follows: "The cost of any such appraisal, including a reasonable fee to each of the appraisers, may on application of any party in interest be determined by the Chancellor and taxed upon the parties to such appraisal, or either or both of them, as may appear to be equitable."

[4] See *Weisbecker v. Hosiery Patents, Inc.*, 356 Pa. 244, 51 A. 2d 811 (1947); *Lauman v. The Lebanon Valley R. R. Co.*, 30 Pa. 42 (1858).

poration. It is an action at law for the benefit of the dissentients not a suit in equity for the benefit of all the stockholders of the corporation.

Costs in actions at law in this Commonwealth depend on statute, and may not be imposed in the absence of statute authorizing it: *Musser v. Good*, 11 S. & R. 247 (1824) ; *Steele v. Lineberger*, 72 Pa. 239 (1872) ; *Black's Appeal*, 106 Pa. 344 (1884) ; *Tunison v. Commonwealth*, 347 Pa. 76, 31 A. 2d 521 (1943). Some of the merger and consolidation statutes provide for costs;[5] and some do not.[6] The Act of 1921, P. L. 949, contains no provision on the subject. The court was therefore without power to assess the costs against the present appellant.

The order appealed from is reversed and the record is remitted for further proceedings.

---

[5] Act of May 15, 1933, P. L. 624, Art. XIV, sec. 1409, 7 PS 819-1409 (merger or consolidation of banks) ; Act of May 23, 1947, P. L. 307, sec. 8, 15 PS 2168 (merger or consolidation of pipe line companies) ; Act of May 5, 1933, P. L. 364, Art. IX, sec. 908, as amended by Act of March 31, 1941, P. L. 13, No. 7, sec. 1, 15 PS 2852-908 (merger or consolidation of general business corporations) ; Act of May 5, 1933, P. L. 457, No. 108, Art. X, section 1009, as amended by Act of July 2, 1935, P. L. 574, sec. 1, and Act of March 15, 1937, P. L. 63, sec. 1, 15 PS 1074-1009 (merger or consolidation of savings and loan associations).

[6] Act of April 18, 1919, P. L. 84, sec. 5, 15 PS 1205 (merger and consolidation of electric light, heat and power companies with motor power or street railway companies) ; Act of June 15, 1911, P. L. 963, sec. 5, 15 PS 1965 (merger or consolidation of motor power company with street railway company) ; Act of April 4, 1919, P. L. 50, sec. 3, 15 PS 1933 (acquisition by motor power companies of property of passenger railroad company owned by a turnpike company) ; Act of June 14, 1901, P. L. 566, sec. 3, 15 PS 2376, and Act of July 22, 1919, P. L. 1123, sec. 6, 15 PS 2393 (purchase of property of one telephone company by another) ; Act of March 22, 1901, P. L. 53, sec. 3, 67 PS 559 (purchase of property of one railroad by another) ; Act of May 16, 1861, P. L. 702, sec. 3, 67 PS 591, and Act of March 24, 1865, P. L. 49, sec. 8, as amended by Act of July 2, 1937, P. L. 2852, sec. 1, 67 PS 606 (merger or consolidation of railway companies).