## Dickinson, Appellant, v. Fire Association of Philadelphia.

Argued April 14, 1954, Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*David Berger,* with him *Harry J. Alker, Jr.* and *Edwin Hall, 2nd,* for appellant.

*Frederick H. Spotts,* with him *Francis E. Shields* and *Pepper, Bodine, Stokes & Hamilton,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, June 28, 1954:

On November 17, 1949 the shareholders of the defendant, Fire Association of Philadelphia, a Pennsylvania corporation, by a vote of 191,704 to 803 approved an agreement of merger between the defendant company and its three affiliates, Reliance Insurance Company of Philadelphia, Lumberman's Insurance Company and Philadelphia National Insurance Company. The appellant, William W. Dickinson, and twelve other shareholders personally attended the meeting, expressed their dissatisfaction with the merger and voted against it. Within thirty days from the time of the agreement and after due notice had been given to the defendant, the appellant and the other dissenting shareholders filed a petition with the court of common pleas to have their stock appraised, pursuant to the provisions of Sec. 336 of the Act of May

17, 1921, P. L. 682, 40 PS §459. An answer was filed to the petition by the defendant wherein it contended (1) that inadequate notice was given by the petitioners and (2) that there was no necessity for the appointment of appraisers because the defendant stood ready and willing to pay the petitioners the full market value of their stock, determined by transactions on the New York Curb Exchange and on the over-the-counter market, as of the date of the adoption of the agreement.

After depositions and argument, the court below upheld the sufficiency of the notice and entered an order appointing three disinterested persons to estimate and appraise the damages, if any, caused by the merger and to appraise the shares of stock owned by the petitioners. Prior to an appraisal the petitioners appealed to this Court and we quashed some of the appeals without prejudice on the ground that they were premature and continued others.

The case was thereupon referred to the appraisers who held a number of hearings and filed their report in which they found that the petitioners had suffered no damages as a result of the merger and fixed the full market value of the stock at $78 a share as of the date of the consummation of the merger. Both sides filed exceptions to the report of the appraisers. The court below dismissed the exceptions and confirmed the report. From that order only one of the original thirteen petitioners, William W. Dickinson, has taken the present appeal.

The rights of the parties must turn upon the interpretation of the phrase "full market value" as it appears in Sec. 336 of the Insurance Company Law of 1921. The pertinent portion of this section of the enactment provides as follows: "If any stockholder or member of any insurance company which shall become

a party to an agreement of merger and consolidation hereunder, shall be dissatisfied with or object to such consolidation, and shall have voted against the same at the stockholders' or members' meeting, it shall be lawful for any such stockholder or member within thirty (30) days after the adoption of said agreement of merger and consolidation, and upon reasonable notice to the company, to apply by petition to any court of common pleas of the county in which the chief office of such company may be situate, or to a judge of said court in vacation, to appoint three disinterested persons to estimate and appraise the damages, if any, done to such stockholder or member by said consolidation. Upon such petition, it shall be the duty of said court or judge to make such appointment; and the award of the persons so appointed, or of a majority of them, when confirmed by the said court, shall be final and conclusive; and the persons so appointed shall also appraise the share or shares of said stockholders or the interest of such members in the company *at the full market value thereof, without regard to any appreciation or depreciation in consequence of the said consolidation,* which appraisement, when confirmed by the court, shall be final and conclusive. . . ." (Emphasis supplied).

In its opinion accompanying the order appointing appraisers the court held that the "full market value" of the shares of stock meant ". . . presumptively the market price, without any appreciation or depreciation in consequence of the merger, subject to such evidence as would indicate that the presumed value is distorted . . . In our opinion it is the duty of the appraisers, in retrospect, to fix a normal market price, if the evidence indicates a distortion upsetting the presumption. In this connection we hold that the appraisers are limited to inquiry into factors, if any existed, which pre-

vented the market price from reflecting the full market value, whether those factors were activated by those in control of the corporation or others interested in the manipulation of its shares, or general market conditions which might have affected the price of these shares along with the price of shares of stock of many other corporations. . .".

It was the appellant's position in the court below as it is in this Court that the term "full market value" means intrinsic or actual value. He contends that the only true criterion of such value is one which takes into account the value of the assets of the corporation in excess of its liabilities, the earning record of the corporation, and its position in the particular field in which it operates, its dividend payment record and all factors which make up the going-concern value of the stockholder's proportionate interest in the corporation which in effect is being dissolved without his consent.

The definite standard prescribed by the statute here involved precludes the approval or adoption of the foregoing formula. If we are to attribute any meaning to the word "market" in the phrase "full market value", we must conclude that the lower court applied the true and correct mode of valuation.

In *Mellier's Estate,* 312 Pa. 157, 168, 167 A. 358, we said ". . . 'The "market value" of property is the price which the property will bring in a fair market after fair and reasonable efforts have been made to find a purchaser who will give the highest price for it. . . The word "market" conveys the idea of selling, and the "market value," it would seem to follow, is the selling value. It is the price which an article will bring when offered for sale in the market.' " [Quoting Words and Phrases, first series, volume 5, page 4383]. In *Kountz v. Kirkpatrick & Lyons, to the use of Fisher,* 72 Pa.

376, 386, we stated, ". . . Ordinarily, when an article of sale is in the market, and has a market value, there is no difference between its value and the market price, and the law adopts the latter as the proper evidence of the value. This is not, however, because value and price are really convertible terms, but only because they are ordinarily so in a fair market. . .". Clearly the Legislature could only have intended what is ordinarily understood by market value when it employed the words in this section. Stock may have several values, a market value, a book value, a speculative value or an actual value, but where the Legislature has clearly made market value the measure of valuation we may not engraft upon the words a strained or assumed construction. Where a market exists uninfluenced by artificial factors,[1] and a statute expressly uses the words "market value", the market value governs rather than a speculative value obtained by estimating the value of the several properties and rights of the corporation: See 13 Am. Jur., Corporations, §1232.

Appellant directs our attention to several cases wherein we have held that on consolidation or merger dissenting shareholders are entitled to receive back their proportionate share of the corporate assets and that the value of their shares is measured by their actual value. He relies principally on the case of *Barnett v. Philadelphia Market Company*, 218 Pa. 649, 67 A. 912. The distinction between that case and the instant one is that the petitioner in the *Barnett* case resorted to a court of equity for relief instead of pursuing the remedy provided by statute. We disagree with the appellant that this is a distinction without a difference. The statutory right of appraisal provided by the In-

---

[1] Which was the case here, according to the finding of the appraisers based upon the evidence introduced.

surance Company Law of 1921 is not the shareholder's exclusive remedy; he has recourse to a legal or equitable action at his election. In the *Barnett* case, supra, this Court did not construe the term "full market value" under Section 5 of the Act of May 29, 1901, P. L. 349. It was merely held that ". . . A dissatisfied stockholder voting against consolidation effected under the act of 1901 'may' have his damages and the value of his stock ascertained and payment of the same secured in the mode pointed out in that act, but this remedy is not his only one. He may adopt it if he prefers it to that which these appellees adopted; but he is not required to do so. . .". This ruling, enunciated in the *Barnett* case, was reiterated in *Nice Ball Bearing Co. v. Mortgage Building & Loan Association,* 310 Pa. 560, 565, 166 A. 239. And see *Petry et al. v. Harwood Electric Co.,* 280 Pa. 142, 124 A. 302, and *Mortgage Building and Loan Association Case,* 334 Pa. 81, 5 A. 2d 342.[2] The statute provides a dissenting shareholder with a more expedient and direct remedy and minimizes the risk and expense that could conceivably accompany an action at law or in equity to prove actual value, which might turn out to be greater or less than market value.

There are no cases in Pennsylvania in which an appellate court or lower court has construed the term "full market value" under this Act or any other Act. As far as we can determine, the courts of but one jurisdiction have interpreted the statutory language

---

[2] Appellant in his brief recognizes the existence of several available remedies, stated therein as follows: "(1) Suit at law for value of stock at the time of the merger. (2) Action in equity to compel payment of the value of the stock at the time of the true merger. (3) Appraisal proceedings under the merger statute to obtain an award for the value of the stock at the time of the merger.".

"full market value" and they have held that the market value governs, rather than a more or less speculative value obtained by estimating the value of the several properties and rights of the company, and dividing the same by the number of shares so as to ascertain the value of each share: *Prall v. U. S. Leather Co.*, 105 N. J. L. 646, 146 A. 916; *In Re Capital Stock of Morris Canal and Banking Co.*, 104 N. J. L. 526, 141 A. 784.

The Supreme Court of Delaware in *Tri-Continental Corporation v. Battye et al.*, 31 Del. Ch. 523, 74 A. 2d 71, 72 (1950), in interpreting the word "value" under the General Corporation Law of that State, adopted the basic doctrine of valuation applied in *Chicago Corporation v. Munds*, 20 Del. Ch. 142, 172 A. 452, which held that "value" meant the true or intrinsic value of the shareholder's stock taken by the merger. The two New Jersey decisions were not followed in the *Munds* case, supra, on the ground that cases falling under a statute which defines the "full market value" as the amount which the shareholder shall be paid are distinguishable from a case which falls under a statute which requires that "value" be paid.

It would serve no useful purpose to attempt to review cases from other jurisdictions because the various statutes involved call for "fair value", "fair cash value" or employ other terminology which differentiate them from the case under consideration. The phrase "market value" is well known to the ordinary citizen and no matter how desirable some other method of appraisal may prove to be, what the law requires cannot be disregarded: *Lehigh & Wilkes-Barre Coal Co.'s Assessment*, 298 Pa. 294, 300, 148 A. 301. Although a certain inequity could result from exclusive reliance on market quotations because of fluctuations attributable to causes other than changes in the value

of shares, that problem would not arise under the present enactment. The Legislature eliminated unfairness by appending the word "full" to market value. Such a statutory guide directs the appraisers to take into account manipulated or depressed market prices brought about by a "bear" or "bull" market and assures the shareholder a just valuation of his interest.

Accordingly we hold that the appellant in the instant case having elected to have his rights adjudicated in accordance with Sec. 336 of the Insurance Company Law of 1921, and the court below having correctly defined the criterion for evaluating his shares, he cannot complain of the appraisers' award made in accordance therewith.

The Act of May 17, 1921, P. L. 682, herein considered, contains no provision for the compensation of the appraisers appointed by the court, nor as to the payment of costs generally. No disposition of costs was made by the court below nor were fees fixed for the appraisers, who remain unpaid. Each of the parties in oral argument and in their briefs before this Court claims and argues that the costs in the lower court should be paid by the other. The defendant corporation contends that the proceeding not being a suit in equity, costs may not be imposed on it in the absence of statutory authorization, citing *Schultz et al. v. Mountain Telephone Company*, 364 Pa. 266, 72 A. 2d 287. There the question arose under the Act of May 20, 1921, P. L. 949, 15 PS §2415, which provided for quite similar procedure for the appraisement of stock of dissenting stockholders in the case of a sale of corporate assets by one corporation to another, and was also silent as to costs. This Court held that the lower court was without power to impose the costs of the appraisal procedure upon the defendant corporation, and that they became payable by the dissenting stockholders

as the losing parties in that they had recovered no damages.

A different situation is presented in the present case. The defendant corporation resisted the appointment of the appraisers, filing an answer to the plaintiff's petition for their appointment in which it was contended that the corporation had the option of paying damages or full market value of the shares and that the full market value was $71 per share which it stood ready and willing to pay. The lower court overruled this contention and appointed appraisers who rejected the valuation of $71 per share and fixed it at $78 per share. The defendant corporation filed an exception to this finding of the appraisers which was dismissed, so that the defendant corporation was a losing party in the court below, and it took no appeal to this Court. It is true that the appellant sought a higher price than he received at the hands of the appraisers and was in this sense unsuccessful. Nevertheless he received in the court below a higher price for his stock than the defendant corporation was at any time willing to pay. We think the costs in the court below, including the fees of the appraisers, should be paid by the defendant corporation. The costs of the appeal to this Court are properly payable by the appellant.

Order affirmed with costs of this appeal payable by appellant; the record is remitted with direction that the court fix reasonable compensation for the appraisers, payable, together with other costs in the court below, by the defendant corporation.